SEAS SHIPPING CO., INC. *v.* SIERACKI.

No. 365.   Argued January 3, 1946.—Decided April 22, 1946.

*Thomas E. Byrne, Jr.* argued the cause for petitioner. With him on the brief were *Rowland C. Evans, Jr.* and *John B. Shaw.*

*Abraham E. Freedman* argued the cause for respondent. With him on the brief was *Charles Lakatos.*

MR. JUSTICE RUTLEDGE delivered the opinion of the Court.

The principal question is whether the obligation of seaworthiness, traditionally owed by an owner of a ship to seamen, extends to a stevedore injured while working aboard the ship.

Sieracki was employed by an independent stevedoring company which was under contract to petitioner to load its ship, the S. S. Robin Sherwood. On December 23, 1942, he was on the vessel loading cargo. The winch he operated was controlled by a ten-ton boom at number five hatch. One part of a freight car had been lowered into the hold. The second part weighed about eight tons. While it was being put down the shackle supporting the boom broke at its crown, causing the boom and tackle to fall and injure respondent.

He sued petitioner and two other companies. These were the Bethlehem Steel Company, to which the Maritime Commission had awarded the contract for constructing the ship, and Bethlehem Sparrow's Point, Inc., which had built part of the ship under agreement with the steel company. The District Court found that the shackle had broken as the result of a defect which had occurred in its forging. The Bethlehem companies had purchased this equipment from another concern. Nevertheless the court held they were negligent in not having tested it adequately before installing it. But the court considered petitioner to be under no such obligation to test [1] and therefore not negligent. Accordingly, it gave judgment against the two Bethlehem companies but in favor of petitioner. 57 F. Supp. 724.

The Circuit Court of Appeals reversed as to petitioner. 149 F. 2d 98. Accepting the District Court's conclusion

---

[1] Visual inspection would not have disclosed the defect.

that it was not negligent, the Court of Appeals was of the opinion that respondent should recover for the ship's lack of seaworthiness.[2] The opinion emphasized that the decision was novel, noting "statements and assumptions each way."[3] Because of the novelty and importance of the question we granted certiorari.[4] 326 U. S. 700.

The finding that the ship was unseaworthy is not disputed. Petitioner says, first, that the doctrine of unseaworthiness is peculiar to admiralty and cannot be applied in a suit brought on the law side of the court. It also urges that in any event the liability may not be extended properly to the benefit of stevedores and longshoremen. And finally petitioner argues that, if the doctrine is properly so applicable, its liability is only secondary to that of the Bethlehem companies, which both courts found to be negligent; and therefore petitioner, the nonnegligent defendant, should not be held "jointly" liable with the negligent ones.

At the outset we may dismiss the first contention. It is now well settled that a right peculiar to the law of admiralty may be enforced either by a suit in admiralty or by one on the law side of the court. *Carlisle Packing Co.* v.

---

[2] The District Court found "that the accident occurred by reason of unseaworthiness of the vessel." 57 F. Supp. 724, 726.

[3] The references were to *W. J. McCahan Co.* v. *Stoffel*, 41 F. 2d 651, 654 (C. C. A. 3); *Cassil* v. *United States Emergency Fleet Corp.*, 289 F. 774 (C. C. A. 9), suggesting liability; and, to the contrary, *Panama Mail S. S. Co.* v. *Davis*, 79 F. 2d 430 (C. C. A. 3); *Bryant* v. *Vestland*, 52 F. 2d 1078 (C. C. A. 5); *Luckenbach S. S. Co.* v. *Buzynski*, 19 F. 2d 871 (C. C. A. 5), rev'd on another ground, 277 U. S. 226; *The Howell*, 273 F. 513 (C. C. A. 2); *The Student*, 243 F. 807 (C. C. A. 4); *Jeffries* v. *DeHart*, 102 F. 765 (C. C. A. 3); *The Mercier*, 5 F. Supp. 511, affirmed, 72 F. 2d 1008 (C. C. A. 9).

[4] See in addition to the authorities cited by the Circuit Court of Appeals, 149 F. 2d at 102; Decision (1945) 45 Col. L. Rev. 957; (1945) 59 Harv. L. Rev. 127; (1946) 19 Temp. L. Q. 336, 339.

*Sandanger,* 259 U. S. 255, 259; *Garrett* v. *Moore-McCor-mack Co.,* 317 U. S. 239, 243–244; *Thornes* v. *Socony-Vacuum Oil Co.,* 37 F. Supp. 616.[5]

Equally unavailable is the contention concerning the secondary character of petitioner's liability. That liability, if it exists, not only sounds in tort,[6] but rests upon an entirely different basis from that upon which recovery has been had against the Bethlehem companies. Such a liability therefore would be not joint but several and the judgment of the Court of Appeals obviously went on this view. Moreover the contention necessarily affects the Bethlehem companies, at any rate in relation to possible claim of indemnity by petitioner. They have not been named as respondents here or served in accordance with Rule 38 (3). Consequently we are precluded from making any determination concerning their rights or liabilities, with relation either to petitioner or to respondent.

The nub of real controversy lies in the question whether the shipowner's obligation of seaworthiness extends to longshoremen injured while doing the ship's work aboard but employed by an independent stevedoring contractor whom the owner has hired to load or unload the ship.

---

[5] Nothing in 28 U. S. C. § 41 (3) is to the contrary. The section provides that federal district courts shall have jurisdiction "of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it . . . ." This does not mean that where suit is brought at law the court is restricted to the enforcement of common-law rights. *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372, 384; *Panama R. Co.* v. *Johnson,* 264 U. S. 375, 387–388; *Panama R. Co.* v. *Vasquez,* 271 U. S. 557, 560–561. "When a cause of action in admiralty is asserted in a court of law its substance is unchanged." *Panama Agencies Co.* v. *Franco,* 111 F. 2d 263, 266.

[6] Cf. text *infra; Cortes* v. *Baltimore Insular Line,* 287 U. S. 367; *Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52.

There could be no question of petitioner's liability for respondent's injuries, incurred as they were here, if he had been in petitioner's employ rather than hired by the stevedoring company. That an owner is liable to indemnify a seaman for an injury caused by the unseaworthiness of the vessel or its appurtenant appliances and equipment has been settled law in this country ever since *The Osceola,* 189 U. S. 158. *Mahnich* v. *Southern S. S. Co.,* 321 U. S. 96, 99, and authorities cited. And the liability applies as well when the ship is moored at a dock as when it is at sea. See, *e. g., The Edith Godden,* 23 F. 43; *Wm. Johnson & Co.* v. *Johansen,* 86 F. 886; *The Waco,* 3 F. 2d 476.

Petitioner insists, however, that the obligation flows from, and is circumscribed by the existence of, the contract between the owner of the vessel and the seaman. Accordingly, since there was no such contract here, it says respondent cannot recover. Respondent is equally insistent that the owner cannot slough off liability to those who do the vessel's work by bringing an intermediary contracting employer between himself and those workers. In respondent's view the liability is an incident of the maritime service rendered, not merely of the immediate contractual relation of employment, and has its roots in the risks that service places upon maritime workers and in the policy of the law to secure them indemnity against such hazards.

Obviously the norm of the liability has been historically and still is the case of the seaman under contract with the vessel's owner. This is because the work of maritime service has been done largely by such persons. But it does not follow necessarily from this fact that the liability either arose exclusively from the existence of a contractual relation or is confined to situations in which one exists.

The origins are perhaps unascertainable.[7] But that fact in itself may be some evidence that contract alone is neither the sole source of the liability nor its ultimate boundary. For to assume this would be at once to project ideas of contract backward into centuries governed more largely than our own by notions of status,[8] and to exclude from the protection all who do the work of the sea without benefit of contract with the owner. It may be doubted, for example, that he has ever been able to escape liability to impressed seamen, in whose cases to speak of "contract" would only rationalize a responsibility imposed regardless of consensual relationship. And it would hardly seem consistent with the obligation's benevolent purposes [9] that

---

[7] It has been suggested that "the seaman's right of indemnity for injuries caused by defective appliances or unseaworthiness seems to have been a development from his privilege to abandon a vessel improperly fitted out." *The Arizona* v. *Anelich*, 298 U. S. 110, 121, note 2; *Mahnich* v. *Southern S. S. Co.*, 321 U. S. 96, 99; cf. *The Osceola*, 189 U. S. 158.

It does not follow that the right of abandonment would not exist if the seaman were hired by another at the instance of the vessel's owner, and no decision to which we have been referred so holds.

[8] See Maine, Ancient Law (1861). For a modern criticism, see Pound, Interpretations of Legal History (1930) 53 *et seq.*

[9] An excellent summary is given by Parker, J., in *The State of Maryland*, 85 F. 2d 944, 945:

"Seamen are the wards of admiralty, and the policy of the maritime law has ever been to see that they are accorded proper protection by the vessels on which they serve. In early days, this protection was sufficiently accorded by the enforcement of the right of 'maintenance and cure.' Vessels and their appliances were of comparatively simple construction, and seamen were in quite as good position ordinarily to judge of the seaworthiness of a vessel as were her owners . . . .

"With the advent of steam navigation, however, it was realized, at least in this country, that 'maintenance and cure' did not afford to injured seamen adequate compensation in all cases for injuries

the owner might nullify it by the device of having all who man the ship hired by others willing to furnish men for such service at sea or ashore.

It is true that the liability for unseaworthiness is often said to be an incident of the seaman's contract. But in all instances which have come to our attention this has been in situations where such a contract existed.[10]  Necessarily

sustained. Vessels were no longer the simple sailing ships, of whose seaworthiness the sailor was an adequate judge, but were full of complicated and dangerous machinery, the operation of which required the use of many and varied appliances and a high degree of technical knowledge. The seaworthiness of the vessel could be ascertained only upon an examination of this machinery and appliances by skilled experts. It was accordingly held that the duty of the vessel and her owners to the seaman, in this new age of navigation, extended beyond mere 'maintenance and cure,' which had been sufficient in the simple age of sailing ships; that the owners owed to the seamen the duty of furnishing a seaworthy vessel and safe and proper appliances in good order and condition; and that for failure to discharge such duty there was liability on the part of the vessel and her owners to a seaman suffering injury as a result thereof. The Osceola, 189 U. S. 158, 175 . . . . In the Edith Godden (D. C.) 23 F. 43, 46, which dealt with the case of a seaman injured by a defective derrick, Judge Addison Brown pointed out that in dealing with injuries sustained by the use of modern appliances 'it is more reasonable and equitable to apply the analogies of the municipal law in regard to the obligation of owners and masters, rather than to extend the limited rule of responsibility under the ancient maritime law to these new, modern conditions, for which those limitations were never designed.' "

See, in addition to the cited opinion of Judge Brown, his opinion in *The City of Alexandria,* 17 F. 390. See also *Storgard* v. *France & Canada S. S. Corp.,* 263 F. 545, 547–548; *The H. A. Scandrett,* 87 F. 2d 708, 711.

[10] In all of the cases cited or found, except perhaps the stevedore cases cited in note 3, where the cause of action has been based upon unseaworthiness, there was a contract. The "implied warranty" on the part of a shipowner that a ship is seaworthy has been read not only into contracts made with seamen, *Hamilton* v. *United States,* 268 F.

in such a setting the statement could have no reference to any issue over liability in the absence of such a contractual relation. Its function rather has been to refute other suggested restrictions which might be held to apply on the facts. Most often perhaps these have been limitations arising from the erroneous idea that the liability is founded in negligence and therefore may be defeated by the common-law defenses of. contributory negligence, assumption of risk and the fellow-servant rule. *Mahnich* v. *Southern S. S. Co., supra;* cf. *Carlisle Packing Co.* v. *Sandanger,* 259 U. S. 255.

Because rationalizing the liability as one attached by law to the relation of shipowner and seaman, where this results from contract, may have been thought useful to negative the importation of those common-law tort limitations does not mean, however, that the liability is itself contractual or that it may not extend to situations where the ship's work is done by others not in such an immediate relation of employment to the owner. That the liability may not be either so founded or so limited would seem indicated by the stress the cases uniformly place upon its relation, both in character and in scope, to the hazards of marine service which unseaworthiness places on the men who perform it. These, together with their helplessness to ward off such perils and the harshness of forcing them to shoulder alone the resulting personal disability and loss, have been thought to justify and to require putting their burden, in so far as it is measurable in money, upon the

15, 21, but also into contracts for the carriage of goods by sea, *Bradley Fertilizer Co.* v. *The Edwin I. Morrison,* 153 U. S. 199, 210–211, although this liability has been modified by the Harter Act, 27 Stat. 445, 46 U. S. C. §§ 189–195; and in rare instances perhaps also into contracts with passengers, cf. *Muise* v. *Gorton-Pew Vessels Co.,* 1938 A. M. C. 714, 718; *Rainey* v. *New York & P. S. S. Co.,* 216 F. 449, 453; Robinson, Admiralty (1939) 306, note 109.

owner regardless of his fault.[11]   Those risks are avoidable by the owner to the extent that they may result from negligence.   And beyond this he is in position, as the worker is not, to distribute the loss in the shipping community which receives the service and should bear its cost.

These and other considerations arising from the hazards which maritime service places upon men who perform it, rather than any consensual basis of responsibility, have been the paramount influences dictating the shipowner's liability for unseaworthiness as well as its absolute character.   It is essentially a species of liability without fault, analogous to other well known instances in our law.   Derived from and shaped to meet the hazards which performing the service imposes, the liability is neither limited by conceptions of negligence nor contractual in character. *Mahnich* v. *Southern S. S. Co., supra; Atlantic Transport*

---

[11] Contributory negligence has never been a defense in suits brought by seamen to recover for injuries due to a ship's unseaworthiness but has been applied merely in mitigation of damages. *Socony-Vacuum Oil Co.* v. *Smith,* 305 U. S. 424, 429; *The Arizona* v. *Anelich,* 298 U. S. 110, 122, and cases cited.   And in *The Max Morris,* 137 U. S. 1, the Court held that in a suit for personal injuries brought in admiralty by a stevedore the admiralty rule of divided damages was applicable. It was said in *The Arizona* v. *Anelich,* at 122–123, with respect to the defense of assumption of risk: "The seaman assumes the risk normally incident to his perilous calling . . ., but it has often been pointed out that the nature of his calling, the rigid discipline to which he is subject, and the practical difficulties of his avoiding exposure to risks of unseaworthiness and defective appliances, make such a defense . . . peculiarly inapplicable to suits by seamen to recover for the negligent failure to provide a seaworthy ship and safe appliances." As to the fellow-servant rule, see *Mahnich* v. *Southern S. S. Co.,* 321 U. S. 96, 100–103; *The Frank and Willie,* 45 F. 494, 495–496.

In this connection is pertinent also the frequently stated rule that the obligation of a shipowner to provide a seaworthy ship is nondelegable. See, e. g., Lord and Sprague, Cases on the Law of Admiralty (1926) 237, note 4; *The Rolph,* 299 F. 52, 55; *Globe S. S. Co.* v. *Moss,* 245 F. 54, 55.

*Co.* v. *Imbrovek,* 234 U. S. 52; *Carlisle Packing Co.* v. *Sandanger, supra.* It is a form of absolute duty owing to all within the range of its humanitarian policy.

On principle we agree with the Court of Appeals that this policy is not confined to seamen who perform the ship's service under immediate hire to the owner, but extends to those who render it with his consent or by his arrangement. All the considerations which gave birth to the liability and have shaped its absolute character dictate that the owner should not be free to nullify it by parcelling out his operations to intermediary employers whose sole business is to take over portions of the ship's work or by other devices which would strip the men performing its service of their historic protection. The risks themselves arise from and are incident in fact to the service, not merely to the contract pursuant to which it is done. The brunt of loss cast upon the worker and his dependents is the same, and is as inevitable, whether his pay comes directly from the shipowner or only indirectly through another with whom he arranges to have it done. The latter ordinarily has neither right nor opportunity to discover or remove the cause of the peril and it is doubtful, therefore, that he owes to his employees, with respect to these hazards, the employer's ordinary duty to furnish a safe place to work, unless perhaps in cases where the perils are obvious or his own action creates them.[12] If not, no

---

[12] In *Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52, the stevedoring company was held liable to its employee for negligence in failing to furnish a safe place to work. This consisted in its failure to secure properly a beam which supported hatch covers removed by it in the loading process. The libelant joined the shipowner with the stevedoring contractor, both being represented by the same proctors and advocates. The stevedoring company acquitted the shipowner and the libel was dismissed as to it. The case, in view of these circumstances, is not authority for the view that the stevedoring company is liable to the stevedore, under the employer's obligation to furnish a safe

such obligation exists unless it rests upon the owner of the ship. Moreover, his ability to distribute the loss over the industry is not lessened by the fact that the men who do the work are employed and furnished by another. Historically the work of loading and unloading is the work of the ship's service, performed until recent times by members of the crew. *Florez* v. *The Scotia*, 35 F. 916; *The Gilbert Knapp*, 37 F. 209, 210; *The Seguranca*, 58 F. 908, 909. That the owner seeks to have it done with the advantages of more modern divisions of labor does not minimize the worker's hazard and should not nullify his protection.

Every consideration, therefore, giving rise to the liability and shaping its character bespeaks inclusion of men intermediately employed to do this work, save only that which is relevant to consent as a basis for responsibility. We do not think this is the ultimate basis of the liability where the seaman hired by the vessel does the work. It is only the source of the relation which furnishes the occasion for the liability, attached by law to performance of the service, to come into play. Not the owner's consent to liability, but his consent to performance of the service defines its boundary. That this is given by contract with the worker's employer rather than with the worker himself does not defeat the responsibility.

---

working place, for the hazards secured against by the shipowner's obligation of seaworthiness. It holds only that the stevedoring company is liable for its own negligence.

It has frequently been said that a shipowner owes to stevedores the duty of providing a safe place to work, see, e. g., *The Joseph B. Thomas*, 86 F. 658, 660; *The No. 34*, 25 F. 2d 602, 604, but cf. *Willis* v. *Lykes Bros. S. S. Co.*, 23 F. 2d 488, 489, although the duty has at times been qualified by statements that it does not extend to latent defects that "a reasonable inspection by the shipowner or his agents would not show." *Wholey* v. *British & Foreign S. S. Co.*, 158 F. 379, 380, affirmed, 171 F. 399.

Accordingly we think the Court of Appeals correctly held that the liability arises as an incident, not merely of the seaman's contract, but of performing the ship's service with the owner's consent. For this view, in addition to the stated considerations of principle, the court rightly found support in the trend and policy of this Court's decisions, especially in *International Stevedoring Co.* v. *Haverty,* 272 U. S. 50; *Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52; and *Uravic* v. *Jarka Co.,* 282 U. S. 234.

The *Haverty* case is of special importance. The Court of Appeals said, with reference to its bearing and that of the *Imbrovek* decision: "And so an injury to a stevedore comes within the classification of a marine tort. Atlantic Transport Co. v. Imbrovek, 234 U. S. 52. It seems, therefore, that when a man is performing a function essential to maritime service on board a ship the fortuitous circumstances of his employment by the shipowner or a stevedoring contractor should not determine the measure of his rights. This is the very basis on which the Jones Act [13] was held applicable to give redress to an injured stevedore in International Stevedoring Co. v. Haverty . . . ." 149 F. 2d 98, 101.

The conclusions are sound, notwithstanding the cases are distinguishable in their specific rulings. From that fact it does not follow that either those rulings or the grounds upon which they went are irrelevant or without force for our problem. It is true that negligence was the basis of recovery in both cases and that in each the stevedoring contractor was held responsible. But it was of the gist of the jurisdictional question presented by the libel

---

[13] Merchant Marine Act of 1920, 41 Stat. 1007, 46 U. S. C. § 688, extending to "seamen" the benefits of the Federal Employers' Liability Act, 45 U. S. C. § 51 *et seq.*

in *Imbrovek*[14] that stevedores injured while working aboard the ship, though not employed by its owner, are within the traditional protections afforded to seamen by admiralty and that "the fortuitous circumstance" of their employment by one other than the owner to do the ship's work not only did not remove them from those protections, but brought their employers within the protection of the liability to supply them.[15]

The same underlying considerations were controlling in the *Haverty* decision, although the liability asserted arose under an Act of Congress and the Court cast its ruling in terms of legislative intent. The only fulcrum for its action was the statute's undefined use of the term "seamen" in conferring the right of recovery under the Federal Employers' Liability Act for the employer's negligence. 41 Stat. 988, 1007. Recognizing that for most purposes "stevedores are not 'seamen,' "[16] and relying upon *Imbro-*

---

[14] It was argued that the wrong, although taking place aboard ship in navigable waters, was not of maritime character and hence not within the admiralty jurisdiction of the District Court.

[15] In answer to the contention that the service was not maritime and hence the independently employed stevedore's claim was not within the admiralty jurisdiction, the Court said: "Upon its proper performance depend in large measure the safe carrying of the cargo and the safety of the ship itself; and it is a service absolutely necessary to enable the ship to discharge its maritime duty. Formerly the work was done by the ship's crew; but, owing to the exigencies of increasing commerce and the demand for rapidity and special skill, it has become a specialized service devolving upon a class 'as clearly identified with maritime affairs as are the mariners'." 234 U. S. 52, 61–62.

[16] The Court of Appeals in this case likewise carefully limited its ruling in recognition of the fact that stevedores are not entitled to all the protections a seaman may claim.

It is in relation to liability for personal injury or death arising in the course of his employment aboard the ship that the policy of our law has been most favorable to the stevedore's claims. Whether or not that policy has been influenced by the vicissitudes experienced in

*vek,* the Court again stressed that "the work upon which the plaintiff was engaged was a maritime service formerly rendered by the ship's crew," and that the statute's policy was to afford compensation for injuries "as properly part of the cost of the business," that is, of the maritime service rendered, rather than by the capricious circumstance of employment "by a stevedore rather than by the ship." And the *Uravic* decision rejected an equally capricious discrimination based upon the nationality of the vessel's flag.

Running through all of these cases, therefore, to sustain the stevedore's recovery is a common core of policy which has been controlling, although the specific issue has varied from a question of admiralty jurisdiction to one of coverage under statutory liability within the admiralty field. It is that for injuries incurred while working on board the ship in navigable waters the stevedore is entitled to the seaman's traditional and statutory protections, regardless of the fact that he is employed immediately by another than the owner.[17]  For these purposes he is, in short, a seaman because he is doing a seaman's work and incurring a seaman's hazards.  Moreover, to make the policy effective, his employer is brought within the liability which is peculiar to the employment relation to the extent that and because he also undertakes the service of the ship.

---

finding protection for him as a result of the *Jensen* decision, 244 U. S. 205; *Davis* v. *Department of Labor,* 317 U. S. 249, 252–253, the reasons underlying the policy are perhaps more nearly identical in this application, as between seamen and longshoremen, than those supporting other rights of the seaman, such as that to maintenance and cure.

[17] In this case we are not concerned with the question whether the same policy extends to injuries incurred ashore by a stevedore engaged in the same work, a matter which is relevant however in *Swanson* v. *Marra Brothers, Inc., ante,* p. 1.  Cf. *O'Donnell* v. *Great Lakes Co.,* 318 U. S. 36.

It would be anomalous if such a policy, effective to control such issues, were less effective when the question is simply whether the stevedore is entitled to the traditional securities afforded by the law of the sea to men who do the ship's work. Nor does it follow from the fact that the stevedore gains protections against his employer appropriate to the employment relation as such, that he loses or never acquires against the shipowner the protections, not peculiar to that relation, which the law imposes as incidental to the performance of that service. Among these is the obligation of seaworthiness. It is peculiarly and exclusively the obligation of the owner. It is one he cannot delegate.[18] By the same token it is one he cannot contract away as to any workman within the scope of its policy. As we have said, he is at liberty to conduct his business by securing the advantages of specialization in labor and skill brought about by modern divisions of labor. He is not at liberty by doing this to discard his traditional responsibilities. That the law permits him to substitute others for responsibilities peculiar to the employment relation does not mean that he can thus escape the duty it imposes of more general scope. To allow this would be, in substantial effect, to convert the ancient liability for maritime tort into a purely contractual responsibility. This we are not free to do.

It remains to consider one other argument, namely, that the *Haverty* decision has been overruled, in effect, by the enactment of the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, 44 Stat. 1424, 33 U. S. C. § 901 ff., and therefore the effect of that decision as furnishing any support for including longshoremen within the owner's obligation of seaworthiness has been

---

[18] See note 11.

nullified. The argument is that by giving longshoremen the rights of compensation afforded by that Act against the employer and making them exclusive, Congress has withdrawn from them not only the protections gained by virtue of the Merchant Marine Act of 1920 under the *Haverty* decision, but also all other protections relating to personal injury which otherwise might be available to them under the general maritime law. In other words, it is claimed that the remedies afforded by the Longshoremen's legislation are exclusive of all other remedies for injuries incurred aboard ship, whether against the employer or others.

This view cannot be accepted. Apart from the fact that the *Uravic* decision was rendered by a unanimous Court some three years after the Longshoremen's and Harbor Workers' Act was adopted, with a like result in *Jamison* v. *Encarnacion,* 281 U. S. 635,[19] the compelling answer is that Congress by that Act not only did not purport to make the stevedore's remedy for compensation against his employer exclusive of remedies against others. It expressly reserved to the stevedore a right of election to proceed against third persons responsible for his injury[20] and, in case of his election to receive compensation, it provided for assignment of his rights against third persons to his employer, binding the latter to remit to him any

---

[19] Both cases were determined on facts which arose prior to enactment of the statute.

[20] Section 33 (a) of the Act provides: "If on account of a disability or death for which compensation is payable under this Act the person entitled to such compensation determines that some person other than the employer is liable in damages, he may elect, by giving notice to the deputy commissioner in such manner as the commission may provide, to receive such compensation or to recover damages against such third person." 44 Stat. 1440, 33 U. S. C. § 933 (a).

excess of the recovery over the compensation, expenses of recovery, etc.[21]

We may take it therefore that Congress intended the remedy of compensation to be exclusive as against the employer. See *Swanson* v. *Marra Brothers, Inc., ante,* p. 1; 33 U. S. C. § 905. But we cannot assume, in face of the Act's explicit provisions, that it intended this remedy to nullify or affect others against third persons. Exactly the opposite is true. The legislation therefore did not nullify any right of the longshoreman against the owner of the ship, except possibly in the instance, presumably rare, where he may be hired by the owner. The statute had no purpose or effect to alter the stevedore's rights as against any but his employer alone. Beyond that consequence, moreover, we think it had none to alter either the basic policy or the rationalization of the *Haverty* decision. Because the recovery under the Merchant Marine Act of 1920 was limited to the employer, the necessary effect of the Longshoremen's and Harbor Workers' Act, likewise so limited, was to substitute its remedy for that provided under the preexisting legislation and the *Haverty* decision's construction of it. There was none to nullify the basic and generally applicable policy of that decision or to affect the validity of its foundations in other applications.

It may be added that, beyond the applicability of those considerations to sustain the stevedore's right of recovery

---

[21] See 33 U. S. C. §§ 933 (b) to (g) inclusive. As to the right of election and the right to receive compensation or the amount of the recovery against third persons, whichever is greater, see *Chapman* v. *Hoage,* 296 U. S. 526, 529; *Marlin* v. *Cardillo,* 95 F. 2d 112; *Grasso* v. *Lorentzen,* 149 F. 2d 127; *The Pacific Pine,* 31 F. 2d 152; *Cupo* v. *Isthmian S. S. Co.,* 56 F. Supp. 45.

The statute did not cover members of a crew of a vessel, thereby saving to them their preexisting rights under the Merchant Marine Act of 1920. 33 U. S. C. § 902 (3). See *South Chicago Coal & Dock Co.* v. *Bassett,* 309 U. S. 251, 256–257.

for breach of the owner's obligation of seaworthiness, are others to support the statutory policy of giving his employer recovery over against the owner when the latter's breach of duty casts upon the employer the burden of paying compensation. These may furnish additional reason for our conclusion. With them however we are not immediately concerned.

The judgment is

*Affirmed.*

Mr. Justice Jackson took no part in the consideration or decision of this case.

Mr. Chief Justice Stone, dissenting.

Mr. Justice Frankfurter, Mr. Justice Burton and I think the judgment should be reversed.

Respondent, the employee of a stevedoring company, which had contracted with petitioner to load its vessel lying in navigable waters, was injured while so employed, in consequence of the failure of a shackle, a part of the ship's tackle, due to its hidden defects. The courts below have found that two other defendants were liable for negligence in furnishing the defective shackle. The courts were unable to find that the injury was attributable to any negligent act or omission of the vessel or its owner. But the Court of Appeals below and this Court have sustained a recovery against petitioner on the novel ground that the owner is an insurer against injury caused by the unseaworthiness of the vessel or its appliances to a maritime worker on board, although not a member of the crew or the ship's company, and not employed by the vessel.

The Court has thus created a new right in maritime workers, not members of the crew of a vessel, which has not hitherto been recognized by the maritime law or by any statute. For this I can find no warrant in history or precedent, nor any support in policy or in practical needs.

The liability of a vessel or its owner to members of the crew, as an insurer of seaworthiness of the vessel and its tackle, was not recognized by the maritime law of England until established by statute.  Merchant Shipping Act, 39 & 40 Vict. c. 80, § 5; 57 & 58 Vict. c. 60, § 458.  In this country the right of the seaman to demand, in addition to maintenance and cure, indemnity for injuries resulting from unseaworthiness, was first recognized by this Court in *The Osceola,* 189 U. S. 158.  In later cases it has been established that due diligence of the owner does not relieve him from this obligation.  See *The Arizona* v. *Anelich,* 298 U. S. 110, 121; *Socony-Vacuum Co.* v. *Smith,* 305 U. S. 424, 429, 432; *Mahnich* v. *Southern S. S. Co.,* 321 U. S. 96, 100, and cases cited; *The Neptuno,* 30 F. 925; *The Frank & Willie,* 45 F. 494; *The Julia Fowler,* 49 F. 277; cf. *The Edwin I. Morrison,* 153 U. S. 199, 210.

The liability of the vessel or owner for maintenance and cure, regardless of their negligence, was established long before our modern conception of contract.  But it, like the liability to indemnify the seaman for injuries resulting from unseaworthiness, has been universally recognized as an obligation growing out of the status of the seaman and his peculiar relationship to the vessel, and as a feature of the maritime law compensating or offsetting the special hazards and disadvantages to which they who go down to sea in ships are subjected.  They are exposed to the perils of the sea and all the risks of unseaworthiness, with little opportunity to avoid those dangers or to discover and protect themselves from them or to prove who is responsible for the unseaworthiness causing the injury.

For these reasons the seaman has been given a special status in the maritime law as the ward of the admiralty, entitled to special protection of the law not extended to land employees.  *Robertson* v. *Baldwin,* 165 U. S. 275, 282–3; *The Arizona* v. *Anelich, supra,* 122, 123; *Calmar*

*S. S. Corp.* v. *Taylor,* 303 U. S. 525; *Socony-Vacuum Co.* v. *Smith, supra,* 430; *Aguilar* v. *Standard Oil Co.,* 318 U. S. 724. See also Judge Addison Brown in *The City of Alexandria,* 17 F. 390, 394, *et seq.* Justice Story said in *Reed* v. *Canfield,* Fed. Cas. No. 11,641, 1 Sumn. 195, 199: "Seamen are in some sort co-adventurers upon the voyage; and lose their wages upon casualties, which do not affect artisans at home. They share the fate of the ship in cases of shipwreck and capture. They are liable to different rules of discipline and sufferings from landsmen. The policy of the maritime law, for great, and wise, and benevolent purposes, has built up peculiar rights, privileges, duties, and liabilities in the sea-service, which do not belong to home pursuits."

It is for these reasons that throughout the long history of the maritime law the right to maintenance and cure, and later the right to indemnity for injuries attributable to unseaworthiness, have been confined to seamen. Longshoremen and harbor workers are in a class very different from seamen, and one not calling for the creation of extraordinary obligations of the vessel or its owner in their favor, more than other classes of essentially land workers. Unlike members of the crew of a vessel they do not go to sea; they are not subject to the rigid discipline of the sea; they are not prevented by law or ship's discipline from leaving the vessel on which they may be employed; they have the same recourse as land workers to avoid the hazards to which they are exposed, to ascertain the cause of their injury and to prove it in court.

Congress has recognized this difference in their status from that of seamen. Although it has given extensive consideration to it in enacting the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. § 901 ff., in 1927, and again, upon its revision in 1934 and 1938, in no instance did Congress extend to longshoremen and

harbor workers any of the special rights or privileges conferred on seamen by the maritime law. In fact Congress, by the Longshoremen's Act, cut off from longshoremen and harbor workers the right extended to them by judicial construction of the Jones Act, 46 U. S. C. § 688, *International Stevedoring Co.* v. *Haverty,* 272 U. S. 50; *Uravic* v. *Jarka Co.,* 282 U. S. 234, to enjoy the same right of recovery from the vessel or owner as seamen for negligent injuries sustained while working on navigable waters. *Swanson* v. *Marra Brothers, ante,* p. 1. While the Act gave to longshoremen and stevedores a right to compensation against their employer, it neither conferred upon nor withheld from them any rights of recovery for such injuries against third persons. It can hardly be said that the failure of Congress thus to enlarge the rights of longshoremen, so as to make them comparable to those of seamen, is a recognition of existing rights against third persons arising from the warranty of seaworthiness which no court has ever recognized* and which grows out of a status which longshoremen have never occupied.

There are no considerations of policy or practical need which should lead us, by judicial fiat, to do that which Congress, after a full study of the subject, has failed to do. Wherever the injury occurs on navigable waters, Congress has given to longshoremen and harbor workers substantial rights to compensation against their employer for in-

---

*The two cases relied upon by the Circuit Court of Appeals do not lend support to its decision. In *Cassil* v. *United States Emergency Fleet Corp.,* 289 F. 774, recovery was sought on the ground that the vessel was negligent, and the court merely said that there could be no claim against the vessel unless it was unseaworthy. The court seems to have assumed that a recovery for unseaworthiness could be had only if negligence was shown. See cases cited in *Mahnich* v. *Southern S. S. Co.,* 321 U. S. 96, 100. In *W. J. McCahan Co.* v. *Stoffel,* 41 F. 2d 651, a longshoreman was allowed recovery on the ground of negligence of one of the ship's employees.

juries inflicted without his fault. *South Chicago Co.* v. *Bassett,* 309 U. S. 251. It has left them free to pursue their remedy for injuries resulting from negligence of third parties, including in this case the vessel and the furnishers of the defective shackle. Where the injury occurs on land they are free to pursue the remedy afforded by local law. *State Industrial Commission* v. *Nordenholt Corp.,* 259 U. S. 263; *Smith & Son* v. *Taylor,* 276 U. S. 179; *Swanson* v. *Marra Brothers, ante,* p. 1. There would seem to be no occasion for us to be more generous than Congress has been by presenting to them paid-up accident insurance policies at the expense of a vessel by which they have not been employed, and which has not failed in any duty of due care toward them. Apparently under the decision now rendered the maritime worker employed by a vessel on navigable waters, but not a member of the crew, would enjoy rights of recovery not accorded to members of the crew. For he would be entitled to indemnity upon the warranty of seaworthiness as are members of the crew and also to the benefits of the Longshoremen's and Harbor Workers' Act from which members of the crew are excluded. See *South Chicago Co.* v. *Bassett, supra,* 255–6.

Nor is the rule now announced to be justified as a modern and preferred mode of distributing losses inflicted without fault. Congress, in adopting the Longshoremen's Act, has chosen the mode of distribution in the case of longshoremen and harbor workers. By 33 U. S. C. § 901 *et seq.* it has given to them compensation for their injuries, irrespective of fault. Section 933 provides that if a stevedore entitled to compensation elects to recover damages against a third person, the employer must pay as compensation a sum equal to the excess of the amount which the commission determines is payable on account of the injury over the amount recovered against the third person.

The whole philosophy of liability without fault is that losses which are incidental to socially desirable conduct should be placed on those best able to bear them. Congress has made a determination that the employer is best able to bear the loss which, in this instance, could not be avoided by the exercise of due care. This is an implied determination which should preclude us from saying that the ship owner is in a more favorable position to absorb the loss or to pass it on to society at large, than the employer.