## SMITH v. ACADIA OVERSEAS FREIGHTERS, Limited.

### The VICTORIA COUNTY.

No. 103 of 1950.

United States District Court
E. D. Pennsylvania.
May 24, 1952.

Stark & Goldstein, Philadelphia, Pa., for plaintiff.

Rawle & Henderson, Philadelphia, Pa., for defendant.

McGRANERY, District Judge.

The libel will be dismissed. The Court sets out herewith its Findings of Fact and Conclusions of Law. One vital issue will first be briefly explored, however. Libellant urges that his uncontroverted evidence was that he had not brought aboard

the vessel the ladder that injured his thumb; that no fellow-employee brought it aboard; and that no such appliance was upon any vehicle used by the stevedore in moving his men and equipment to and from the ship, at any time while libellant was on the vessel. From this evidence we are asked to presume that the extension ladder in question belonged to the vessel or constituted part of its equipment. Such an inference would be improper. It would constitute an unwarranted extension of the doctrine of Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, which held that the traditional absolute obligation of seaworthiness owed by the owner of the vessel covered stevedores as well as seamen. The owner, with respect to the stevedore, was made an insurer of the vessel's appliances. To indulge in the presumption contended for by the libellant would make the owner the insurer of any appliance found on board, the origin of which the injured party was not prepared to show except to state that he had not put it there. We would not be justified in so broadening the *Sieracki* rule. We think that it is the libellant's duty to prove the origin of the offending appliance as an element of his case.

### Findings of Fact.

1. The respondent corporation, organized under the laws of Canada, operated and controlled Steamship "Victoria County" at all times material to this action.

2. During the month of December, 1948, the vessel while at the port of Philadelphia required the services of Thomas A. Winters Ship Engineering Company, an independent contractor, to clean the holds. Part of this operation was performed while the vessel was at the yard of Sun Shipbuilding and Dry Dock Company near Chester, Pennsylvania. The libellant was employed by Thomas A. Winters Ship Engineering Company as a laborer to assist in the cleaning work.

3. On December 29, 1948, the libellant and a fellow-employee identified by him only as "Porkchop" were cleaning the lower No. 4 hold, which was about forty feet high. In order to sweep off the beams supporting the deck above them, these men required the use of a ladder to reach the under side of the beams. While standing at the bottom of the hold, they called to other employees of Thomas A. Winters Ship Engineering Company who were working on the main deck to furnish them with a ladder. The ladder was lowered to them by the winchman, who was also a fellow-employee.

4. This ladder was described as a wooden extension ladder with two sections each about 20 feet long. The extended or upper section was held in place by metal catches or brackets. There were three such brackets, one at each side at the lower end of the extended section and another one midway between them, shaped roughly like an inverted "V" and intended to rest on a rung of the lower section in order to hold the upper section firmly in whatever position might be desired. The upper section could be raised or lowered by a rope operating through pulleys.

5. Libellant and his fellow-employee extended the ladder, and "Porkchop" mounted to the top to clean the beams. The libellant stayed below on the bottom of the hold to steady the ladder. When it was necessary to move the ladder to a new position, "Porkchop" descended to the bottom of the hold and the two men together shifted the ladder while it was still in an extended position.

6. In order to grasp the ladder firmly to move it, the libellant placed his hands at the sides of the ladder and his thumbs were on one rung of the lower section. While the ladder was being moved on one occasion, the upper section dropped down and the catch or bracket jammed libellant's left thumb against the rung of the lower section.

7. After the ladder telescoped and jammed the libellant's thumb, he slipped on the deck of the hold and the ladder fell with him. The libellant slipped in what he described as coal dust on the deck. His duties at that time were to assist in cleaning this substance from the hold, as contracted by his employer.

8. The libellant inspected the ladder after the accident and found that the catches or brackets intended to support the upper section were loose to an extent which would

account for the accident. I find that this defect in the ladder constituted the sole, direct and proximate cause of the libellant's injuries.

9. The lighting conditions in the hold at the time of the accident were described by the libellant as "dark" although he testified that the hatch was completely open and it was daylight. He was able to see that the ladder was in a defective condition by means of the light then available. The Court finds under all of the evidence that the lighting was adequate at the time of the accident.

10. No evidence was produced by the libellant to establish the ownership of the defective ladder which caused this accident, or to show any trade custom which would create a reasonable inference that the ladder was supplied by the vessel.

### Conclusions of Law.

 1. The Court has jurisdiction of the parties and subject matter.

2. The sole, direct and proximate cause of the libellant's injury was the allegedly defective condition of the extension ladder.

3. There was no evidence offered by the libellant which would justify a reasonable inference that the ladder was owned or supplied by anyone employed by, or representing, the shipowner.

4. A shipowner is not responsible for injuries to employees of an independent contractor resulting from their use of defective appliances which are not the property of the vessel or part of its equipment, or which are brought on board the vessel by the independent contractor for the use of such employees.

5. There is no presumption that an appliance such as an extension ladder, which is used by employees of an independent contractor in cleaning a ship, belongs to the vessel or constitutes part of its equipment.

6. Under the evidence, the libellant slipped and fell as a result of the ladder falling on his thumb. There is no evidence that his injury was caused or aggravated when he slipped on the coal dust or other substance which he stated was on the bottom of the hold.

7. The libellant's evidence was insufficient in law to make out a prima facie case of liability against the shipowner.

8. The respondent's motion to dismiss the libel, presented at the close of the libellant's case, is hereby granted.

9. A decree may be submitted in accordance with the foregoing findings of fact and conclusions of law.