John H. Black and Edw. R. Kay, San Francisco, Cal., for libelant.

Broebeck, Phleger & Harrison, J. Stewart Harrison, San Francisco, Cal., for respondents.

**JOSHUA HENDY CORPORATION, a corporation, Libelant,**

v.

**MOORE DRY DOCK COMPANY, a corporation, Black Company, a corporation, White Company, a partnership; First Doe and Second Doe, individuals, Respondents.**

No. 26023.

United States District Court, N. D. California, S. D.

Dec. 17, 1954.

ROCHE, Chief Judge.

Action by Joshua Hendy Corporation, assignee of Pacific Tankers, to recover from Moore Dry Dock Company $42,000 which was paid to an injured seaman by Pacific Tankers.

The facts are as follows:

Pacific Tankers, Inc., (the predecessor of Joshua Hendy Corporation), as repair representative for the U. S. Maritime Commission, entered into a written contract with Moore Dry Dock Company agreeing among other things to furnish and install two 30 foot, 3 ton booms on board the U. S. naval tanker, Pecos.

This installation was completed on or about January 21, 1948 and a document certifying that the booms had been tested was given to Pacific Tankers by Moore Dry Dock Company.

On January 30, 1948, the U. S. Navy delivered the vessel to Pacific Tankers Inc., who was to operate the vessel from

that date forward under the terms of the operating contract.

On March 5, 1949, after the vessel had taken a cargo, and while the port midship boom was in the process of being lowered into its cradle the goose neck pin holding the boom to the king post broke. The boom fell striking and injuring a seaman, Jorgen Robertson.

On August 17, 1949, the injured man, Jorgen Robertson filed a civil action in the Superior Court in and for the City and County of San Francisco against Pacific Tankers claiming damages in the amount of $105,000. When the trial of this litigation was imminent in January, 1951, Pacific Tankers notified Moore Dry Dock of the litigation, and tendered the defense theory to Moore Dry Dock, a theory based on the proposition that the responsibility for the broken boom lay with Moore Dry Dock, the manufacturer and installer of the boom.

Since Pacific Tankers was absolutely liable to the injured seaman by reason of the unseaworthiness of the vessel under authority of Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, settlement negotiations were entered into with counsel for Robertson. Moore declined to participate in said settlement negotiations, whereupon Pacific Tankers settled the case in the amount of $42,500.

On January 24, 1952, Joshua Hendy, as assignee of Pacific Tankers, filed the present libel against Moore Dry Dock setting forth three causes of action, namely:

(1) Indemnity for Maritime tort based on negligence of respondent in manufacturing, supplying and installing defective boom fittings.

(2) Breach of implied warranty based on respondent's failure to manufacture supply 'and install sound and seaworthy boom fittings and its failure to properly inspect or test the boom fittings, and breach of written warranty in certifying and representing to libelant that the fittings were in all respects sound and seaworthy when in fact they were defective, unsound and unseaworthy.

(3) Contractual indemnity.

Each of the three theories of recovery stated in the libel are derived from the allegation that respondent improperly manufactured the boom's goose neck and/or horizontal pin.

*A. The Goose Neck Pin.*

Libelant contends that the goose neck pin was improperly manufactured in that it had been improperly annealed and had not been adequately heat treated. The evidence discloses that the goose neck pin met all the requirements of standard commercial practice, and all the specifications of the Navy and American Society for Testing Metal with regard to chemical composition and physical characteristics.

The evidence further discloses that on January 16, 1948, at the request of Moore Dry Dock Company, the American Bureau of Shipping tested the booms and certified that they satisfactorily complied with required standards. It is the court's view that libelant has not proven by a preponderance of the evidence that the goose neck pin was improperly manufactured.

*B. The Horizontal Pin (Heel Pin)*

Libelant contends that the heel pin was improperly manufactured by respondent in that a plug was left in the grease channel, thus preventing the heel pin's proper lubrication.

Assuming that libelant's theory that respondent left a plug in the grease channel is correct, the following succession of events logically occurred from the time of installation.

(1) A plug was left in the grease channel by the respondent at the time of manufacture.

(2) Respondent's riggers failed to follow their usual practice of testing the grease channel.

(3) Pacific Tankers, when acting as repair representative of the United States failed to detect the improperly manufactured part.

(4) The crew of the vessel while at sea for a period of fourteen months failed to detect the plugged grease channel when greasing the boom.

### 1. Plug in the grease channel

The evidence discloses that the grease channel had been properly drilled, and that at some subsequent time it had become plugged with foreign matter. The court is of the view that libelant has failed to prove by a preponderance of the evidence that the material forming this plug was present when the heel pin was installed.

### 2. The Riggers

Respondent's witness, Mr. Kristianson, a rigger in its yards, testified that he always tested grease channels by squirting grease under high pressure into them. He further testified that when the grease ran out of the sides of the fittings he could tell that grease was coming through to the bearing surface. The usual practice in Moore Dry Dock's yards, as testified to by the witness, was to conduct such test on all fittings of the type discussed in this opinion.

### 3. Pacific Tankers, repair representative

Pacific Tankers acted as repair representative of the U. S. Government when the vessel Pecos was outfitted.

Paragraph 11(c) (i) of the contract between Moore Dry Dock and the government reads as follows:

"During the Contractor's performance thereof, the work shall be subject to inspection and test by the Repair Representative at any and all times and places, and any part of the work may be rejected by the Repair Representative if not as specified or because of defective workmanship or materials; any portion of the work so rejected shall forthwith be replaced or corrected by the Contractor at its own cost and expense. If the Contractor fails to proceed promptly with any such replacement or correction of such materials or workmanship as required by the Repair Representative, the Admin-istrator may, by contract or otherwise, replace or correct such materials or workmanship and charge to the Contractor the cost occasioned the Administrator thereby."

As stated in the above contract clause, the work done by Moore Dry Dock aboard the vessel Pecos was subject to inspection and test by Pacific Tankers acting as repair representative of the United States.

### 4. The Crew

The vessel Pecos was at sea a full fourteen months before the accident in question occurred. One of the duties of the crew was to grease the boom, and the method employed was exactly as in respondent's yards, that is by squirting grease under high pressure into the fittings.

During the entire period at sea, fourteen months, no member of the crew ever complained that grease would not enter into the fittings on the boom because they were plugged. Assuming that the grease channel had been plugged at the time of installation, and remained that way until the accident occurred, it is the court's view that Moore Dry Dock's riggers, or the repair representative, or the crew would have, in the course of carrying out their duties discovered this fact. It would be speculation and conjecture to conclude on the basis of the evidence presented in this case that the plug was present in the grease channel at the time of installation. Viewing the entire evidence, libelant has failed to prove either negligence, breach of warranty or breach of contract on the part of the respondent.

It is unnecessary to discuss the defense of laches raised by the respondent, as the above opinion has disposed of libelant's case on the merits.

In accord with the above

It Is Ordered that there be entered herein upon findings of fact and conclusions of law judgment in favor of defendant Moore Dry Dock Company, a corporation, and that the respective parties pay their own costs.