215 F.3d 420 (4th Cir. 2000)
 CELESTINE GARRIS, ADMINISTRATRIX OF THE ESTATE OF CHRISTOPHER GARRIS, DECEASED, PLAINTIFF - APPELLANT,
v.
NORFOLK SHIPBUILDING & DRYDOCK CORPORATION, DEFENDANT - APPELLEE, AND E. T. GRESHAM, INCORPORATED, DEFENDANT.
 No. 98-2368 (CA-98-382-2).
 U.S. Court of Appeals, Fourth Circuit.
 FILED: June 01, 2000.
DISSENT FILED: June 2, 2000.
 ON PETITION FOR REHEARING EN BANC
 
 1
 Appellees filed a petition for rehearing en banc.
 
 
 2
 A member of the Court requested a poll on the petition for rehearing en banc. The poll failed to produce a majority of judges in active service in favor of rehearing en banc. Judges Widener and Niemeyer voted to rehear the case en banc. Chief Judge Wilkinson and Judges Murnaghan, Wilkins, Luttig, Williams, Michael, Motz, Traxler, and King voted against rehearing en banc.
 
 
 3
 The Court denies the petition for rehearing en banc. Entered at the direction of Judge Williams for the Court.
 
 WIDENER, Circuit Judge, dissenting:
 
 4
 I respectfully dissent to the denial of rehearing en banc in this case. I would grant rehearing en banc in this case of first impression.
 
 
 5
 The panel opinion relies almost exclusively on the opinion in Moragne v. States Marine Lines, Inc., 398 U.S. 375 (1970). In Moragne, the Court addressed discrepancies "between the remedies for deaths covered by the Death on the High Seas Act and for deaths that happen to fall within a state wrongful death statute not encompassing unseaworthiness . . . ." 398 U.S. at 399. Finding that Congress could not have foreseen these discrepancies, the Court concluded that the Death on the High Seas Act did not foreclose any non-statutory federal remedies that would effectuate the policies of general maritime law. Moragne, 398 U.S. at 399-400.
 
 
 6
 With respect to longshoremen and other harbor workers, the Moragne Court found that a claim for wrongful death based upon the unseaworthiness of a vessel was viable because the unseaworthiness doctrine had been extended to longshoremen as the principal vehicle for recovery of injury or death while performing work on a vessel, Moragne, 398 U.S. at 399, on the authority of Seas Shipping Co. v. Sieracki, 328 U.S. 85 (1946). Sieracki extended to land-based stevedores the right given by maritime law to seamen to recover against the ship owner, without the need of proving negligence, for injuries caused by the unseaworthiness of the vessel. Following Sieracki, courts made awards to longshoremen on the basis of unseaworthiness. And, as noted, the Moragne Court specifically relied on the Sieracki decision to extend the coverage of a wrongful death cause of action based on unseaworthiness to a longshoreman.
 
 
 7
 In 1972, Congress enacted various amendments to the Longshore and Harbor Workers' Compensation Act. As part of these amendments, Congress added 33 U.S.C. § 905(b), which specifically eliminates the right of longshoremen and harbor workers to recover against the vessel on the basis of unseaworthiness. See Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 165 (1981) (longshoreman's right to recover for unseaworthiness abolished); Herbert R. Baer, Admiralty Law of the Supreme Court § 6-17 at 90-91 (2d ed. Supp. 1977). The legislative history mentions Sieracki by name and rejects the holding of that case to the extent that it created an absolute duty of seaworthiness to "longshoreman and others who performed work on the vessel." H.R. Robert E. Payne. No. 92-1441 (1972), reprinted in 1972 U.S.C.C.A.N. 4698, 4702. Thus, because Moragne relies on Sieracki to extend a wrongful death action based on unseaworthiness to longshoremen and harbor workers, to the extent of that reliance Moragne was superceded and reversed by the 1972 amendments to the act. Thus, the panel opinion's reliance on this portion of Moragne is misplaced.
 
 
 8
 The legislative history of the 1972 amendments to the Act are particularly relevant to our decision in this case. It is clear from this history that Congress intended to "place an employee injured aboard a vessel in the same position he would be if he were injured in non- maritime employment ashore, insofar as bringing a third party damage action is concerned, and not to endow him with any special maritime theory of liability or cause of action under whatever judicial nomenclature it may be called, such as `unseaworthiness', non-delegable duty', or the like." 1972 U.S.C.C.A.N 4698, 4703.*
 
 
 9
 In spite of this explicit expression of Congressional intent, the panel opinion creates a new cause of action which is exactly the opposite of that which Congress intended. First, the decision creates a "special maritime theory of liability" - one for wrongful death based on negligence. Second, the decision gives an employee injured aboard a vessel a cause of action that a Virginia worker on shore would not have.
 
 
 10
 In a case such as this in which Congress has made its intention explicit, I suggest it is beyond our warrant to substitute our notions of public policy for that of Congress. Local 1976, United Bhd. of Carpenters and Joiners v. N.L.R.B., 357 U.S. 93, 100 (1958) ("[I]t is the business of Congress to declare policy and not this Court's. The judicial function is confined to applying what Congress has enacted after ascertaining what it is that Congress has enacted."). "Whether the federal policy is a wise one is for the Congress and the Chief Executive to determine. Once they have spoken, it is our function to enforce their will." United States v. Georgia Pub. Serv. Comm'n, 371 U.S. 285, 293 (1963).
 
 
 
 Notes:
 
 
 *
 As Scindia points out both the Senate and House Committee Reports agree on this language. Scindia, 451 U.S. at 165-166 n.13.