**Tina CONDER, Appellant–Plaintiff,**

v.

**RDI/CAESARS RIVERBOAT CASINO, INC. and M/V Glory of Rome, Appellees–Defendants.**

**No. 31A01–0907–CV–348.**

Court of Appeals of Indiana.

Dec. 31, 2009.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Karl Truman, Karl Truman Law Office, LLC, Jeffersonville, IN, Attorneys for Appellant.

Steven B. Belgrade, John A. O'Donnell, Belgrade and O'Donnell, P.C., Chicago, IL, Gene F. Price, Frost Brown Todd LLC, Louisville, KY, Attorneys for Appellees.

## OPINION

BAKER, Chief Judge.

Appellant-plaintiff Tina Conder appeals the trial court's dismissal of her complaint against appellants-defendants RDI/Caesars Riverboat Casino, Inc., and M/V Glory of Rome (collectively, Caesars). Conder argues that we should reconsider our opinion in the prior appeal in this matter and that the trial court erroneously dismissed her claim against Caesars based on her alleged status as a Sieracki seaman. Declining to reconsider our prior opinion and finding no error in the dismissal of her Sieracki claim, we affirm.

## FACTS

The underlying facts have already been described by this court in the first appeal in this litigation:

> Caesars operates a casino (the Casino) on the riverboat M/V Glory of Rome (the Riverboat). The Riverboat is a passenger vessel that is registered with and regularly inspected by the U.S. Coast Guard. It has its own engines and machinery, as well as navigation, lifesaving, and fire-fighting equipment.
>
> In August 2002, the Casino began exclusively conducting dockside gambling pursuant to amendments to Indiana state law that allowed casinos to stop cruising and conduct gaming while dockside. Since that time, the Riverboat has been moored and stationary with the exception of rare tests conducted in compliance with federal regulations. It is connected to the dock by eight mooring lines, two double-up lines, three fuel hoses, a sewage and water hose, and seven power cables. Since August 2002, the Riverboat has not transported passengers, cargo, or equipment.
>
> Beginning in March 2002, Conder was employed as a table games dealer in the Casino. On August 19, 2003, and on subsequent occasions, Conder was repeatedly bitten by fleas during the course of her employment at the Casino. Treatment for her adverse reaction to the flea bites included large doses of steroids, which allegedly caused her to have a heart attack.
>
> On April 26, 2005, Conder filed a complaint against Caesars, seeking compensation for her injuries based on the Jones Act[1] or, in the alternative, pursuant to Indiana worker's compensation laws as a seaman pro hac vice—a Sieracki seaman. On March 26, 2007, Cae-

sars filed a motion to dismiss the complaint pursuant to Indiana Trial Rule 12(B)(1). On May 15, 2007, Conder filed a motion for partial summary judgment, seeking a declaration as a matter of law that she is a Jones Act Seaman. The trial court held a hearing on the motion to dismiss and the motion for partial summary judgment on October 10, 2007, and on December 4, 2007, the trial court summarily denied Caesars's motion and granted Conder's motion.

*RDI/Caesars Riverboat Casino, Inc. v. Conder,* 896 N.E.2d 1172, 1173–74 (Ind.Ct. App.2008) (*Caesars I*) (internal footnote omitted). In *Caesars I,* the primary issue was "whether the Riverboat is a 'vessel in navigation' under the Jones Act." *Id.* at 1175. After a lengthy examination of relevant precedent, this court reached the following conclusions:

> like the majority of cases in which a riverboat casino was found not to be a vessel in navigation, the Riverboat was theoretically capable of being in navigation but was intended to be removed from navigation and was practically unable to navigate except in emergency situations.... It is undisputed that since 2002, the Riverboat's operations have been entirely gaming-related, and not maritime in nature. In other words, the Riverboat is an indefinitely moored dockside casino with no transportation function or purpose. We agree with the Seventh Circuit that "indefinitely moored dockside casinos are not the kind of vessel that the Jones Act addresses[, given] ... the statute's purpose of enhancing legal protections for seamen 'regularly' exposed to the 'perils of the sea.'" *Howard [v. S. Ill. Riverboat Casino Cruises, Inc.],* 364 F.3d [854, 857 (7th Cir.2004)] (citing *Chan-*

---

**1.** 46 U.S.C. § 688.

*dris [v. Latsis]*, 515 U.S. 347, 369[, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995)]).

* * *

In sum, the Riverboat has been moored to the dock since 2002. It has had no transportation function since that time. It is joined to the land by a number of cables. It is connected to land-based utilities. Its owners intend that it remain stationary for the foreseeable future. Thus, the Riverboat's operations are gaming-related, rather than maritime in nature, and that has been the case since 2002. Conder, as a table games dealer for the Casino, is simply not an employee who is regularly—or at all—exposed to "the special hazards and disadvantages to which they who go down to sea in ships are subjected." *McDermott [Int'l, Inc. v. Wilander ]* 498 U.S. [337, 354, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)]. Under these circumstances, we cannot conclude that the Riverboat is a vessel in navigation or that Conder is the type of employee that the Jones Act is intended to cover and protect. We find, therefore, that the trial court erred as a matter of law by granting Conder's motion for partial summary judgment and denying Caesars's motion to dismiss the Jones Act count of Conder's complaint.[FN]

> FN. Conder included a second, alternative, count in her complaint, seeking relief as a seaman pro hac vice—a Sieracki seaman. We infer from the pleadings in the appendices that the Casino included this count in its motion to dismiss. The Casino, however, has not appealed the trial court's order denying its motion to dismiss with regard to the Sieracki seaman count. Indeed, neither party addresses this issue on appeal. Consequently, we remand for further proceedings on this claim.

*Id.* at 1179 (some internal citations omitted). Conder did not seek rehearing on this opinion and filed an untimely request for transfer to our Supreme Court, which dismissed the transfer request and declined to consider it.

On March 25, 2009, Caesars filed a motion to dismiss Conder's complaint, including her claims seeking relief under the Jones Act and as a Sieracki seaman. On April 3, 2009, the trial court granted the motion with respect to the Jones Act claims, and on June 1, 2009, the trial court summarily dismissed Conder's remaining claims, including the Sieracki seaman claim. Conder now appeals.

## DISCUSSION AND DECISION

### I. Jones Act

Conder's primary argument on appeal is that *Caesars I* was incorrectly decided. In support of this position, she makes precisely the same arguments she made in the first appeal of this matter. We decline to revisit the holding of *Caesars I.* Additionally, contemporaneously with this opinion, we are entering an order granting Caesars's motion to strike this issue from Conder's briefs and granting Conder's motion to strike the portion of Caesars's appendix including the briefs and appendix filed in *Caesars I.*

### II. Sieracki Seaman Claims

■ Conder also argues that the trial court improperly dismissed her claims seeking relief as a Sieracki seaman. In reviewing a dismissal under Indiana Trial Rule 12(B)(6), we must determine whether, in the light most favorable to the plaintiff and with every inference drawn in her favor, the complaint states any set of allegations upon which the trial court could have granted relief. *Thomson Consumer Elecs., Inc. v. Wabash Valley Refuse Removal Inc.,* 682 N.E.2d 792, 793 (Ind.1997).

The Sieracki seaman doctrine arises from *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). The *Sieracki* Court held that a longshoreman, who was injured by a dangerous, defective condition while aboard a vessel, could recover from the vessel's owner under a theory that the owner had breached its warranty of seaworthiness of the ship. *Id.* at 99–102, 66 S.Ct. 872; *see also* Black's Law Dictionary 954 (7th ed.1999) (defining "longshoreman" as "[a] maritime laborer, such as a stevedore, who works on the wharves in a port; a person who loads and unloads ships").

The parties disagree about whether the Sieracki doctrine has survived the 1972 amendment of the Longshore and Harbor Workers' Compensation Act. 33 U.S.C. §§ 901–950. We need not answer that question, however, inasmuch as Conder is not entitled to relief as a Sieracki seaman in any event. A prerequisite to asserting such a claim is status as a longshoreman, and to qualify as such, one must be engaged in "maritime employment." *Herb's Welding, Inc. v. Gray,* 470 U.S. 414, 423–24, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985) (stating that "maritime employment" includes "those workers on the situs who are involved in the essential elements of loading and unloading"); *see also Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 267, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977) (holding that it is "clear that persons who are on the situs but not engaged in the overall process of loading or unloading vessels are not covered"). Here, Conder was a card dealer in a casino that this court has already concluded was not maritime in nature; therefore, she was not engaged in maritime employment. Thus, Conder does not qualify as a Sieracki seaman.

Furthermore, a Sieracki seaman claim requires the involvement of a navigating "vessel." *See generally Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (decision resting, in part, on the unseaworthiness of the longshoreman's vessel). Here, we have already found in *Caesars I* that an indefinitely moored dockside casino with no transportation function or purpose does not qualify as a vessel in navigation. 896 N.E.2d at 1179. We further found that "the Riverboat's operations are gaming-related, rather than maritime in nature, and that has been the case since 2002." *Id.* at 1181. Under these circumstances, we find, likewise, that the Riverboat does not qualify as a "vessel" for the purpose of a Sieracki claim. Therefore, under no circumstances is Conder entitled to relief on this basis, and the trial court did not err by dismissing this claim.

The judgment of the trial court is affirmed.

BAILEY, J., and ROBB, J., concur.