**FLYNN v. UNITED STATES.**

United States District Court
S. D. New York.
June 15, 1951.

Richard M. Cantor, New York City (George Halpern, New York City, of counsel), proctors for libelant.

Irving H. Saypol, United States Atty., New York City (Joseph K. Inness, New York City, of counsel), Proctors for respondent.

WRIGHT, District Judge.

The issues of fact and law in the above entitled suit having duly come on to be heard on the pleadings and proofs of the parties and due deliberation having been had, I now find and decide as follows:

Findings of Fact

1. The respondent, the United States of America, owned and operated the SS James Fergus at all times relevant to these proceedings, and at the time of the filing of the libel the vessel was within the jurisdiction of the Southern District of New York.

2. That during the voyage extending from February 1 to June 7, 1944, libelant served aboard the vessel James Fergus in the capacity of able-bodied seaman in the deck department of the vessel.

3. During the voyage the vessel was traveling in convoy under the orders of the United States Navy under wartime conditions. While there was no doctor aboard the vessel medical aid, assistance and advice were available from the medical officers of the United States Navy assigned to warships escorting the convoy.

4. The vessel arrived at its first port of call, Trinidad, on March 11th, 1944, and sailed from there on March 12th. The vessel arrived at its second port of call, Rio de Janeiro, southbound, on March 31st, 1944, and sailed from there on April 7th, 1944. The vessel arrived at the port of Montevideo on April 11th and sailed from there on April 21st, 1944. The vessel next arrived at the port of Buenos Aires on April 22nd and sailed from there on April 29th. The vessel next arrived at the port of Rio de Janeiro, northbound, on May 3rd and sailed from there on May 6th. The vessel next arrived at the port of Trinidad, northbound, on May 21st, and sailed from there May 23rd, arriving at the port of New York on June 4th, 1944.

5. While in the port of Montevideo a seaman named Horton was signed on the vessel in the capacity of wiper in the engine department. At the time of signing on Horton did not inform either the American Counsel or the General Agent of the SS James Fergus in Montevideo that he was suffering from syphilis in its primary stage in spite of the fact that he had been treated for that disease in Montevideo prior to signing on the vessel.

6. The Chief Officer of the SS James Fergus, who was also acting in the capacity of the ship's doctor, was not advised of Horton's condition until May 1, 1944, at which time he prescribed a treatment for Horton which consisted primarily of sulphanilimide powder and bandaging the penis where the lesions had appeared. Horton was not isolated at this time. He continued to take his meals with the rest of the crew, using the same utensils and drinking fountain.

7. The Chief Officer on learning of Horton's condition made no effort to communicate with the medical officers of the United States Navy assigned to warships escorting the convoy in order to obtain advice or assistance in treating Horton in spite of the fact that the Chief Officer's only medical education consisted primarily of a few hours instruction in medicine. Horton's condition worsened and when the vessel arrived at Rio de Janeiro on May 3, 1944, he was sent ashore to a doctor who apparently recognized Morton's syphilitic condition and prescribed medication therefor. The Chief Officer of the vessel, however, was unaware of the nature of the medication or treatment prescribed for Horton by the doctor in Rio.

8. On leaving Rio, Horton's syphilis progressed from its primary to its secondary stage. Some two or three hundred lesions broke out all over his body and on May 15, 1944 the Chief Officer radioed the medical officer of the convoy for instructions as to treatment.

9. The medical officer of the convoy instructed the Chief Officer by return radio to isolate the patient. He also prescribed further treatment for Horton which was different from the treatment previously given him. The doctor also recommended that Horton be put ashore in the next port of call which was done when the vessel reached Trinidad on May 21st.

10. From the evidence it appears that during the time Horton was aboard the SS James Fergus his syphilis progressed from its primary to its secondary stage. It is recognized that syphilis is a most infectious disease, particularly so during its first and second stages.

11. On or about May 20, 1944 libelant developed three blisters on his upper lip and his lip became swollen. Two of the blisters responded to treatment prescribed by the Chief Officer and the doctor who came aboard the vessel in Trinidad. Several days before the vessel arrived in New York, however, the condition of the remaining blister became worse, developing into a sore. The lips and neck glands became swollen at this time.

12. On arrival in New York libelant reported to the United States Public Health Service Clinic at 67 Hudson Street, New York City, on June 4, 1944 where the blister was examined and libelant was directed to the United States Marine Hospital, Staten Island, where he was an inpatient from June 4 to June 21, 1944.

13. A physicial examination of libelant at said hospital disclosed an ulcerated lesion on the left side of the upper lip, with moderate amount of induration; swelling at angle of jaw, left, with tenderness. Darkfield of lip shingles was positive; Wasserman negative; Kahn negative. He received antiluetic therapy and was advised he had syphilis. Libelant had never suffered from a venereal disease before he signed on the James Fergus.

14. On June 24, 1944 after release from the hospital, as he was required to do by law, libelant reported to the New York State Department of Health, Division of Syphilis Control, Troy, New York Clinic, and on June 26, 1944, the Wasserman Test taken of libelant showed a 4 + 4 +.

15. Between June 26, 1944 and February 23, 1945, libelant was treated at said Clinic twice each week, and received Mapharsen and Bismuth. In November 1945 and each year thereafter, he returned to such Clinic, up to June 8, 1951, for tests. Wassermans have been negative.

16. Between May 20, 1944 and February 23, 1945 libelant suffered from syphilis. The evidence preponderates to the effect that the libelant contracted the disease of syphilis through contact with the seaman Horton on board the SS James Fergus.

17. As a result of this syphilis and treatment therefor libelant could not return to his occupation as a seaman. Although he was able to obtain employment as a truck driver subsequent to his release from the hospital he was unemployed as a result of syphilis he had acquired aboard the James Fergus between June 7 and July 7, 1944, July 28, 1944 to October 29, 1944 and ¾ hours each day for 42 visits to the Troy Clinic where he was treated for his disease.

18. Libelant is entitled to maintenance at the rate of $6 per day for the periods, June 21, 1944 to July 7, 1944, and July 28, 1944 to October 29, 1944, or a total of $636.

19. Libelant is entitled to wages at the rate of $250 per month for the periods, June 7 to July 7, 1944, and July 28 to October 29, 1944, or a total of $1000.

Conclusions of Law

1. This court has jurisdiction over the subject matter of this action and venue is properly laid in the Southern District of New York.

2. Respondent failed to furnish libelant with a safe place to work and must be held responsible for any damage to libelant which resulted from respondent's failure to comply with its obligation in this regard. Seas Shipping Company, Inc., v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L. Ed. 1099.

3. Respondent was negligent in allowing the syphilitic Horton to remain on board the vessel, to use the same mess room, eating utensils, toilet facilities and recreation facilities as the other members of the crew. Respondent was also negli-

gent in failing to isolate Horton immediately on discovery of his disease. Respondent was likewise negligent in allowing Horton to return to the vessel at Rio de Janeiro knowing full well that he was suffering from a dreaded disease at its most infectious stage.

4. Respondent's failure to furnish the libelant with a safe place to work and respondent's negligence in allowing Horton in his diseased condition to contaminate, through the use of identical facilities, the other members of the crew were the direct and proximate causes of libelant's contracting the disease of syphilis.

5. Libelant was not guilty of contributory negligence.

6. Libelant is entitled to recover for pain and suffering, for the impairment of the natural intimacy of his family life during the time it was impaired, and for the social stigma imposed upon him by virtue of the public record of his having syphilis.

7. Libelant is entitled to recover the sum of $5,000 on his first cause of action, and $1636 on his second cause of action or a total of $6,636.

Let a decree be prepared in accord with these findings.