**UNITED STATES LINES COMPANY,**
Appellant,

v.

**Rufus KING and Southern Stevedoring Corporation, Appellees.**

**No. 10181.**

United States Court of Appeals
Fourth Circuit.

Argued Feb. 10, 1966.

Decided June 17, 1966.

John W. Winston, Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief), for appellant.

C. Arthur Rutter, Jr., Norfolk, Va. (Amato, Babalas, Breit, Cohen, Rutter & Friedman, Norfolk, Va., on brief), for appellee Rufus King.

L. S. Parsons, Jr., Norfolk, Va. (Parsons & Powers, Norfolk, Va., on brief), for appellee Southern Stevedoring Corp.

Before HAYNSWORTH, Chief Judge, and BOREMAN and BRYAN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge.

Longshoreman Rufus King was injured while working aboard the S.S. American Flyer, then taking on cargo at Norfolk, Virginia. He sued the vessel's owner, United States Lines Company, for damages, laying his misfortune to the shipowner's negligence and the ship's unseaworthiness. Besides denying fault entirely, the shipowner filed a third-party complaint against King's employer, Southern Stevedoring Corporation, for indemnity in the event King succeeded in his suit. To support its claim for indemnity, the shipowner charged that the stevedore's carelessness caused the longshoreman's injuries.

Both claims were submitted to a jury. It found for King against the shipowner on unseaworthiness, the issue of negligence having been withdrawn by the Court; it could not agree on a verdict as to indemnity. The Court sustained King's recovery. On its earlier motion for a directed verdict, the stevedore was acquitted of liability for indemnification. The shipowner appeals.

We affirm the judgment for King. The exoneration of the stevedore is reversed, and the indemnity controversy remanded for a new trial.

Rufus King was a hatch boss at No. 3 lower hold, where the ship was loading bundles of flitches. These are boards of rough unfinished lumber. Approximately 16 to 18 feet in length, they were bound in bundles measuring about 2½ feet in width and 2½ feet in height. Each bundle was encircled by two or three metal bands, one not more than three feet from each end, and sometimes a third in the middle. The flitches were bundled before delivery for shipment.

The loading process was to place a draft of bundles in a wire sling resting on the pier at shipside. With the vessel's winches the stevedore would hoist and swing the sling over the side of the ship, and then lower it into the hatch of hold No. 3. Timbers were laid across the floor of the hatch square to receive the draft. Upon reaching the bottom, the wire sling was removed and withdrawn to repeat the routine.

The level of the hatch flooring was slightly above the deck surrounding it. A metal or brow plate, some 12 inches in width, extended from the elevated square to the deck with a 10-degree decline. With the sling recalled, a forklift truck would approach, extend its forks under the bundles, carry them out of the hatch square to the point of stowage, and there lift them into place.

In one of these movements King was injured. The draft consisted of two bundles, one above the other. The truck driver thrust the forks under the bundles as far that they would go. This caused the bundles to recline against the vehicle. After raising the forks about 8 inches above the hatch square, the truck was driven out of the square and partially down the brow plate. The truck stopped with its front wheels on the deck and its rear wheels still within the square, thus giving it a forward, downward tilt.

The operator states that he then leveled his load by raising the outer ends of the forks. Next, he raised the bundles vertically until the top one was beyond, and no longer leaning against, the truck. As the load was elevated further to the point of stowage, the band around the upper bundle, and to the right of the driver, was observed to be broken. No one actually saw it break. The pieces of lumber spread and dropped toward the rear of the truck. First they hit the truck guard, over the driver's seat, and continuing to fall some of them struck King standing at the right rear of the truck.

■ The shipowner's foremost assignment of error is the District Court's peremptory charge to the jury that if the band was defective, this per se rendered the vessel unseaworthy. The argument is that the bands were a part of the cargo, and that the shipowner owes the longshoremen no warranty in reference to the cargo—i. e. that it is safe to handle—equivalent to its warranty of the ship's

seaworthiness. See Carabellese v. Naviera Aznar, S.A., 285 F.2d 355, 359 (2 Cir. 1960). Agreement with this contention, however, does not demand that the error assignment be sustained. On the undisputed facts, the District Judge was justified in concluding that the bands were either appliances for handling the cargo or were containers. Hence whether or not they were also an item of cargo is not material. See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 356, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962).

■ Necessary loading tackle is made available to a stevedore by the ship, and the law implies a warranty of its seaworthiness. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). This is an assurance that such rigging is reasonably suitable and fit. When, as here, the bands are utilized by the ship as an instrument for loading, the warranty attaches to them. If they served as a container, their security is likewise vouched. No distinction is presently justified between unloading and loading. Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 212, 213, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., supra, 369 U.S. 355, 361 fn. 3, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962); Alaska S.S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601 (1954); Reddick v. McAllister Lighterage Line, Inc., 258 F.2d 297, 299 (2 Cir. 1958). As this responsibility is altogether separate from the matter of warranting the intrinsic safety of the cargo, no discussion of the latter is appropriate. Cf. Carabellese v. Naviera Aznar, S.A., supra, 285 F.2d 355, 360.

■ The shipowner's second point is that the evidence was insufficient to establish the band as defective. Of course, if the band parted solely because of the faulty manner in which the truck was maneuvered, there would be no liability on the shipowner. On the other hand, if the band was frail and the driver careless also, and these two factors concurred in causing the bundle to separate, the shipowner would be liable.

■■ On review of the evidence, we cannot say it was insufficient to prove the band imperfect and the fall of the boards a proximate result. The District Court's refusal to admit certain prior and apparently inconsistent testimony of a witness, and its rejection of the plaintiff's answer to an interrogatory were both, we think, incorrect rulings. They were admissible in an attempt to impeach the deponent and the plaintiff as witnesses at trial. However, we do not think the error affected the verdict. Consequently King's judgment against United States Lines Company is affirmed.

■ United States Lines next attacks the directed verdict absolving the stevedore from the indemnity claim. Here it should prevail. There was evidence from which the jury could have held against the stevedore. Raising the bundles to a height of more than 12 feet above the deck while the truck was on an incline, required a delicate adjustment of the forks and a skillful balancing of the heavy load. Obviously, special care and expertness were demanded. If the maneuver was not executed in a workmanlike manner, the stevedore was negligent. Whether or not it was negligent could be judged from proof of the machine's operation, its movements and its handling of the cargo.

■ If preponderant in disclosing negligence, this evidence was adequate to support a verdict for the shipowner against the stevedore. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., supra, 369 U.S. 355, 361, 82 S.Ct. 780, 7 L.Ed.2d 798; Weyerhauser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). This result was permissible despite the jury's finding that the band was unseaworthy. If the ship was unseaworthy, but the defect dormant until aroused by the stevedore's negligence, the shipowner might lose to the longshoreman injured by the unseaworthiness, yet recover indemnity of the stevedore for the latter's

**662**

breach of its warranty to load the vessel in a workmanlike manner. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 426, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Thompson v. Trent Maritime Co., 353 F.2d 632, 637 (3 Cir. 1965).

The judgment for King will be affirmed. The judgment on the verdict directed against the shipowner must be reversed and a new trial ordered on the indemnity claim.

Affirmed in part, reversed in part, and remanded for a new trial.