Lewis McNEIL

v.

**A/S HAVTOR**

v.

**INDEPENDENT PIER COMPANY.**

Civ. A. No. 69–2118.

United States District Court,
E. D. Pennsylvania.

Feb. 26, 1971.

Franklin D. Rubin, Philadelphia, Pa., for plaintiff.

T. J. Mahoney, Philadelphia, Pa., for defendant.

## OPINION

TROUTMAN, District Judge.

Libellant, a longshoreman, brought suit against defendant shipowner seeking to recover damages for personal injuries allegedly sustained as a result of defendant's negligence and breach of the warranty of unseaworthiness. Presently before the Court is defendant's motion for summary judgment. Having reviewed the record, we find no dispute as to the material facts which are as follows:

Libellant, Lewis McNeil, is a longshoreman employed by third-party defendant, Independent Pier Company. He was so employed on September 29, 1967, at Pier 55 South wharves, Philadelphia, where defendant's ship, the S/S HAVSUL was berthed. Libellant's injuries occurred when the "squeeze lift" truck he was operating struck an undetermined object on the pier shed floor. As a result of striking this object the steering wheel spun and a knob attached thereto struck and injured libellant's wrist.

Libellant's job in the longshoring gang was to operate the "squeeze lift" truck in the confines of the warehouse or pier shed. His specific responsibility in the operation was to lift and transfer certain cases from pallets owned by Independent Pier Company to pallets owned by defendant. The squeeze lift truck was owned by Independent Pier Company and it supervised the work.

Libellant himself did not go aboard defendant's vessel to physically place the cartons on shipboard. However, other longshoremen in the same gang using fork lift trucks transferred the pallets which libellant loaded from the pier to the ship's side. Thereafter, the ship's tackle lifted the cargo aboard for storage and ultimate sea carriage.

Defendant contends that the doctrine of unseaworthiness cannot extend to libellant on the instant facts. We must at the outset recognize that certain basic principles are well established. It is basic that a shipowner is liable to indemnify a seaman for injuries caused by the unseaworthiness of his vessel or its appurtenant appliances and equipment. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903). The same protection afforded to crew members is extended to longshoremen engaged in the ship's service doing traditional seamen's work. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); McKnight v. N. M. Paterson & Sons, Ltd., 286 F.2d 250 (6th Cir. 1960). This is true whether the accident caused by the vessel's unseaworthiness occurs away from the ship on the pier. Gutierrez v. Waterman S. S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963).

Defendant contends that it did not employ libellant, did not control the situs of the work and did not supply or control the instrumentality directly involved in libellant's accident. Defendant argues that it, therefore, has no responsibility because in such circumstances no justification exists to extend

the warranty of unseaworthiness to libellant.

■ Defendant's contentions have been thoroughly discussed and rejected by the decided cases. The doctrine of unseaworthiness is neither limited by conceptions of negligence or contract, but is a form of absolute duty owing to those who perform the traditional work of seamen. Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944); Seas Shipping Co. v. Sieracki, supra, 328 U.S. at 95, 66 S.Ct. 872.

■ The work of loading and unloading the ship is, as a matter of law, work in the ship's service performed until recent times by members of the ship's crew. Thompson v. Calmar S. S. Corp., 331 F.2d 657, 659 (3rd Cir. 1964); Hagans v. Ellerman & Bucknall S. S. Co., 318 F.2d 563 (3rd Cir. 1963). The shipowner cannot nullify the protections given by the doctrine of unseaworthiness by contracting out his operations to intermediary employers. Seas Shipping Co. v. Sieracki, *supra,* 328 U.S. at 96, 66 S.Ct. 872, 878. The duty cannot be delegated. "That the owner seeks to have [the work] done with the advantages of more modern divisions of labor does not minimize the worker's hazard and should not nullify his protection." *Id.*

■ Defendant contends that no gear of the ship was involved and, therefore, the ship cannot be held accountable by any application of the doctrine of unseaworthiness. However, the shipowner's warranty of seaworthiness is not limited to an unsafe condition created by the actual physical agencies of the vessel itself, *Gutierrez, supra,* but extends to equipment supplied by the stevedore which is used in the ship's service. Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954), affirming *per curiam* 205 F.2d 478 (9th Cir. 1953); Rogers v. United States Lines, 347 U.S. 984, 74 S.Ct. 849, 98 L.Ed. 1120 (1954) reversing *per curiam* 205 F.2d 57 (3rd Cir. 1953);

see Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964) and Spann v. Lauritzen, 344 F.2d 204 (3rd Cir. 1968). In the instant case, therefore, the shipowner cannot be exonerated from liability by the mere fact that the "squeeze lift" truck involved here was owned by Independent Pier Company rather than by defendant. Law v. Victory Carriers, Inc., 432 F.2d 376 (5th Cir. 1970); Deffes v. Federal Barge Lines, Inc., 361 F.2d 422 (5th Cir.), cert. denied sub nom Continental Grain Co. v. Deffes, 385 U.S. 969, 87 S.Ct. 503, 17 L.Ed.2d 433 (1966).

■ If in the instant case libellant was in the ship's service engaged in the loading process, the warranty of seaworthiness extends to him. We must, therefore, decide whether under the instant facts libellant was engaged in the process of loading the S/S HAVSUL.

Defendant asks that we characterize libellant's job as a mere transfer of materials from the place on the pier warehouse to another place within the warehouse.

Defendant relies principally on Drumgold v. Plovba, 260 F.Supp. 983 (E.D. Va. 1966) where the Court, for the purposes of defining the scope of the seaworthiness rule, adopted a narrow definition of the terms "loading" and "unloading" in two related cases before it. The Court held that loading does not begin until the cargo is actually in the process of being physically moved from the stevedore's truck to the ship's deck. Likewise, as to unloading, the Court held that the process of unloading terminates after the cargo is at rest on the pier awaiting removal to another area. We cannot subscribe to *Drumgold* or to the narrow characterization urged by defendant. The more prevalent view which is well supported by authoritative case law is to define the term loading in a realistic, pragmatic and non-ritualistic manner. In our own district, Judge Kraft expressed this view on facts similar to those now before the Court.

In Byrd v. American Export Isbrandtsen Lines, Inc., 300 F.Supp. 1207 (E.D.Pa. 1969) libellant, a longshoreman, was injured while engaged in moving cargo by means of a forklift machine from one point on the dock to another point nearer the vessel. On defendant's motion for summary judgment, Judge Kraft held that libellant was involved in operation of loading the vessel at the time of the injury. Faced with arguments similar to those raised here by defendant and in *Drumgold,* the Court noted that:

> "[D]efendant unduly delimits the term 'loading' to the actual transfer of the cargo from the front of the pier to the vessel. The backing [of the forklift truck] to the intended cargo and the endeavor to attach the tow rope between the two vehicles were concomitant and essential steps in the loading operation". (Emphasis ours) 300 F.Supp. at 1208.

■ "The term loading is not a word of art, and is not to be narrowly and hypertechnically interpreted". Litwinowicz v. Weyerhaeuser Steamship Co., 179 F.Supp. 812, 817, 818 (E.D.Pa.1959). Where the conduct in question is a direct and necessary step in the loading operation and where the equipment being used is necessary for that purpose, libellant must realistically be considered as engaged in the loading process of the vessel for the purposes of unseaworthiness. See Byrd v. American Export Isbrandtsen Lines, *supra.*

■ On the instant facts, libellant, in transporting the intended cargo towards the vessel from its place of storage on the pier, must be considered as engaged in a direct and necessary step in loading the ship. Because the work was done by three separate longshoring gangs in three integrated steps does not make the entire operation any less a loading operation. Nor can that fact make de-

fendant's participation, in a pragmatic and realistic sense, any less necessary to the overall operation of loading the S/S HAVSUL.

In a realistic sense, the loading process must begin somewhere. We hold, on the present record, that it at least begins when the intended cargo in the pier shed begins its movement towards the ship. We consider it a strained analysis that the process of loading may only be characterized as the actual physical lifting of the cargo into the ship's hold. We, of course, offer no opinion on whether other more remote hypothetical situations may constitute an integral part of the loading process.

Law v. Victory Carriers, Inc., 432 F.2d 376 (5th Cir. 1970) decided recently in the Fifth Circuit, is squarely on point both in law and fact and is in accord with the more practical and realistic approach of interpreting the term loading. Likewise, the following cases lend ample additional authority to this approach. See *e. g.,* Gebhard v. S. S. Hawaiian Legislator, 425 F.2d 1303 (9th Cir. 1970); Huff v. Matson Navigation Co., 338 F.2d 205 (9th Cir. 1964); Thompson v. Calmar Steamship Corp., 331 F. 2d 657 (3rd Cir.) cert. denied 379 U.S. 913, 85 S.Ct. 259, 13 L.Ed.2d 184 (1964); Spann v. Lauritzen, 344 F.2d 204 (3rd Cir. 1965); *cf.* Hagans v. Ellerman & Bucknall Steamship Co., 318 F.2d 563 (3rd Cir. 1963) (unloading); Olvera v. Michalos, 307 F.Supp. 9 (S.D.Tex.1968).

■ Defendant further contends that even if libellant was engaged in the loading process in any event the squeeze lift truck could not be considered unseaworthy. Libellant, however, premises his claim of unseaworthiness upon a breach of longshoring safety and health regulations. Although not specifically stated, libellant apparently relies upon 29 C.F.R. § 1504.73(g) (1) and (2) [1].

---

1. The regulation reads as follows:
   1504.73(g) (1) Steering knob when furnished on vehicles where the driver is not in a sitting position, shall be of a mushroom type unless the steering mech-anism is of a type that prevents road reactions from causing the steering handwheel to spin. The steering knob shall be mounted within the periphery of the wheel.

In the area covered by these regulations, their violation would render the shipowner liable under the doctrine of unseaworthiness, if such were the proximate cause of libellant's injuries. Provenza v. American Export Lines, Inc., 324 F.2d 660, 665 (4th Cir. 1963). The requirements of the regulations may be considered by the triers of fact in determining whether their alleged nonperformance results in unseaworthiness and consequent liability to the defendant. *Provenza*, supra, at 666. Based upon the foregoing, we, therefore, hold that libellant as a longshoreman performing the operation indicated by the instant facts was, as a matter of law, engaged in the loading process and in the service of the ship. Consequently, he is entitled to the benefits of the doctrine of unseaworthiness. The remaining questions concerning alleged breach of the longshoring regulations and proximate cause are properly ones for the jury as triers of the facts. We, therefore, shall deny defendant's motion for summary judgment as to the issue of unseaworthiness.

We add, parenthetically, that this is not an unreasonable or harsh application of the unseaworthiness rule in this case. It is clear that when the shipowner defers loading to the stevedoring contractor, he relies upon his competency in the selection and use of equipment necessary to that purpose. The Supreme Court has recognized in such circumstances that "[it is not] unfair or unwise to require the stevedore to indemnify the shipowner for damages sustained as a result of injury-producing defective equipment supplied by a stevedore in furtherance of its contractual obligations". Italia Soc., etc. v. Ore. Stevedoring Co., 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732 (1963). Indemnity contracts are prevalent in the present practice as we understand it. The burden ultimately falls upon the company in the best position to minimize the hazards. *Id.*

As to the issue of negligence, apart from the doctrine of unseaworthiness, the shipowner owes a non-delegable duty to longshoremen working in the service of his vessel to provide them with a reasonably safe place to work, regardless of whether the shipowner has control over the pier. *Gutierrez, supra;* Thompson v. Calmar Steamship Corp., 331 F.2d 657, 661 (3rd Cir. 1964). Failure to provide a reasonably safe place to work would constitute negligence. Beard v. Ellerman Lines, Ltd., 289 F.2d 201 (3rd Cir. 1961). In Fisher v. United States Lines Co., 198 F.Supp. 815 (E.D.Pa.1961), quoted with approval in *Thompson, supra,* our Court stated:

> "The shipowner has a duty not to permit its ship's unloading activities, which can affect people on the pier, to be carried on in a way that subjects those people in the area of these activities to an unreasonable risk of harm."

Additionally, the failure to forbid the use of loading or unloading methods by the stevedore which do not comply with the standard of reasonable care may constitute negligence. *Beard, supra.*

Whether defendant breached its duties as aforementioned is not for the Court to decide, but rather is a question of reasonableness appropriate for the jury's determination. We, therefore, shall deny defendant's motion for summary judgment as it relates to negligence as well as unseaworthiness.

---

(2) Steering knobs or similar ancillary devices shall not be used on the steering wheels of trucks in which the driver is in a sitting position.