Willie Lee **CANNIDA**, Appellant,

v.

**CENTRAL GULF STEAMSHIP COR-
PORATION**, Appellee.

No. 19513.

United States Court of Appeals,
Third Circuit.

Argued Dec. 9, 1971.

Decided Dec. 28, 1971.

Paul M. Goldstein, Philadelphia, Pa.
(William Goldstein, Philadelphia, Pa., on
the brief), for appellant.

Andrew C. Hecker, Jr., LaBrum &
Doak, Philadelphia, Pa. (James B. Doak,
Philadelphia, Pa., on the brief), for ap-
pellee.

Before McLAUGHLIN, ALDISERT
and ROSEN, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

Appellant, Willie Lee Cannida, appeals
from an order dated October 8, 1970
granting summary judgment in favor of
appellee Central Gulf Steamship
Corporation.[1]

Cannida was employed by Northern
Metal Co. as a handyman. He worked a
five-day week, 8 A.M. to 4 P.M.,
punched a time clock and performed a
variety of duties for Northern. On sev-
eral occasions he loaded and unloaded
cargo for vessels moored at the North-
ern pier.[2] He was a member of the In-
dustrial Union of Marine and Shipbuild-
ing Workers of America, AFL–CIO Lo-
cal No. 14, and was not hired through
usual longshore gang procedures.

On March 4, 1968 the S/S Green Bay,
a merchant vessel, owned and operated
by defendant Central Gulf Steamship
Corporation, was moored at the North-
ern Metal pier for the purpose of taking
on cargo. The cargo included large
forklift trucks. On said date Cannida,
pursuant to instructions from a North-
ern Metal employee, was helping to move
a cargo of forklift trucks from the
Northern Metal yard to a point on one
of the Northern piers. From that point,
the cargo could be connected to the lift-
ing gear, and loaded on the Green Bay

1. The order was signed by Chief Judge John
W. Lord, Jr., of the United States Dis-
trict Court for the Eastern District of
Pennsylvania in conformity with his writ-

ten opinion, D.C., 317 F.Supp. 873, of the
same date.

2. Appellant's App. 13a–14a, pp. 6 and 7.

vessel. Since these forklift trucks were not operable, they were towed on the end of the rope one at a time, by a tractor driven by another Northern Metal employee. Cannida's sole duty was to steer the forklifts to the point where the loading operation could begin. When the forklifts had reached a position from which they could be lifted into the ship, the rope was unhooked from them. Cannida and the driver of the tractor repeated this procedure on each occasion. Cannida did not assist in any manner with the actual loading of the vessel. While one of the forklifts steered by Cannida was being towed behind the tractor on the pier, it overturned. Cannida fell off the forklift and sustained injuries when the truck fell on him. It is uncontradicted that the accident occurred when the forklift he was steering "hit some rough spots, some holes that were on the pier and lost control of it." At the oral deposition, he testified that the holes at the point of the accident were 18 or 20 inches wide and 7 or 8 inches deep, and that, to his knowledge, they existed from the time he went to work for Northern in 1966 to the time of this accident.[3]

Appellant argues (a) that "although plaintiff was not technically classified as a longshoreman he was working in conjunction with men who were technically classified as longshoremen in that the work he [Cannida] was doing was work that was usually done by longshoremen"; (b) that Cannida was within the scope of the warranty of seaworthiness of the S/S Green Bay; (c) that the S/S Green Bay was unseaworthy; (d) that

there are questions of fact supporting inferences of liability and hence the issue was wrongfully resolved by the District Court on summary judgment.[4]

Assuming *arguendo* that Cannida is a longshoreman, is he a person to whom the warranty of seaworthiness extends? The answer is found in Victory Carriers, Inc. v. Law.[5]

The United States Supreme Court in *Victory* distinguished Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) and Gutierrez v. Waterman S. S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), and held that a longshoreman who suffers injury while transferring cargo by a pier-based forklift on a pier to a point alongside a vessel for loading was neither injured "upon the high seas or navigable waters" within the traditional maritime meaning nor injured "by a vessel on navigable waters" within the scope of the Admiralty Extension Act of 1948.[6] The court refused to extend the warranty of seaworthiness shoreward for injuries sustained by a longshoreman on land merely because he was engaged in the process of "loading" or "unloading".

The facts presented in the case *sub judice* are less compelling than the facts in *Victory*. The appellant's contentions are without merit. We find that the warranty of seaworthiness of the vessel S/S Green Bay does not extend to Cannida who was injured as a result of an alleged defective pier.

The judgment of the District Court is affirmed.

---

3. Appellant's App. 25a–26a, pp. 18 and 19.

4. The complaint in the District Court alleged the unseaworthiness of the S/S Green Bay and the negligence of Central Gulf Steamship Corporation as a basis for recovery of Cannida's injuries. There was no evidence of any negligence on the part of Central, its agents or employees. No contention was made in the District

Court or in this Court that the negligence claim has merit. The District Court correctly dealt only with the unseaworthiness claim.

5. Supreme Court of the United States, Slip opinion No. 70-54 decided December 13, 1971; 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383.

6. 62 Stat. 496 (1948), 46 U.S.C. § 740.