Lewis McNEIL

v.

A/S HAVBOR

v.

INDEPENDENT PIER COMPANY.

Civ. A. No. 69–2118.

United States District Court,
E. D. Pennsylvania.
March 13, 1972.

---

Arnold C. Grossman, Fine, Staud, Silverman & Grossman, Philadelphia, Pa., for plaintiff.

Krusen, Evans & Byrne, E. A. Smith, Philadelphia, Pa., for defendant.

## MEMORANDUM

TROUTMAN, District Judge.

Plaintiff, a longshoreman, instituted this action against defendant shipowner to recover damages for personal injuries allegedly sustained as a result of defendant's: (1) negligence and (2) breach of warranty of seaworthiness. Presently before the Court is defendant's motion for reconsideration of its prior motion for summary judgment, 326 F.Supp. 226. Upon reviewing the record, we find no disputed issue as to the material facts which are as follows:

Plaintiff, Lewis McNeil, is a longshoreman employed by third-party defendant, independent Pier Company. He was so employed on September 29, 1967, at Pier 55 South Wharves, Philadelphia, where defendant's ship, the A/S HAVBOR was berthed. Plaintiff's injuries occurred when the "squeeze lift" truck he was operating struck an undetermined object on the pier shed floor. The impact caused the steering wheel to spin, and a knob attached thereto struck and injured plaintiff's wrist.

Plaintiff's job in the longshoring gang was to operate the squeeze lift truck, which was owned by plaintiff's employer and supervisor, Independent Pier Company. His specific responsibility in the operation was to lift and transfer certain cases from pallets owned by Independent Pier Company to pallets owned by defendant. Thereafter, other longshoremen in the same gang would use forklifts to transfer these pallets from the pier to the ship's side, where they would be lifted aboard by the ship's tackle. During the course of his employment, plaintiff did not go aboard defendant's vessel and operated solely within the confines of a marine terminal.

Initially, plaintiff concedes that he cannot prove that his injuries were caused by defendant's negligence, thus, our sole concern is with the issue of seaworthiness. In Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971) the Supreme Court held that a longshoreman who suffers injury while transferring cargo by a pier-based forklift on a pier to a point alongside a vessel for loading was neither injured "upon the high seas or navigable waters" within the traditional maritime meaning nor injured "by a vessel on navigable waters" within the scope of the Admiralty Extension Act of 1948. Thus, the Court refused to extend the warranty of seaworthiness shoreward for injuries sustained by a longshoreman on land merely because he was engaged in the process of "loading" or "unloading". See Cannida v. Central Gulf Steamship Corp., 452 F.2d 949 (3rd Cir., December 28, 1971). The facts of the instant case are strikingly similar to those in *Law*, where the court enumerated the operative factors to determine the existence of maritime jurisdiction:

"In the present case, however, the typical elements of a maritime cause of action are particularly attenuated: respondent Law was not injured by equipment which was part of the ship's usual gear or which was stored on board, the equipment which injured him was in no way attached to the ship, the forklift was not under the

control of the ship or its crew, and the accident did not occur aboard ship or on the gangplank." 404 U.S. at 213, 92 S.Ct. at 462.

The facts of the instant case militate even more strongly toward dismissal than those of *Law*, for there *Law* was transferring his load alongside the vessel and, here, plaintiff was operating exclusively within the marine terminal. We, therefore, conclude that under Victory Carriers, Inc. v. Law, supra, we lack federal maritime jurisdiction over the subject-matter of this act.

Plaintiff, however, argues that *Law* dealt with maritime jurisdiction and did not limit the application of maritime law. Since this is a diversity case, plaintiff contends, this Court has jurisdiction notwithstanding *Law* and must, under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) apply Pennsylvania law. Plaintiff further argues that the Pennsylvania courts have applied maritime law in cases involving longshoremen and seamen. Lloyd v. Victory Carriers, Inc., 402 Pa. 484, 167 A.2d 689 (1960); Garrett v. Moore-McCormack, 344 Pa. 69, 23 A.2d 503 (1942). In this factual situation, the Pennsylvania courts, it is argued, would apply the general principles of maritime law as set forth in Guiterrez v. Waterman Steamship Co., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963) and Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, (1946), which were not overruled by *Law* and which would entitle plaintiff to a recovery. We must reject this line of argument for we read *Law* to mean that maritime law may not be applied in the absence of maritime jurisdiction. The Supreme Court in *Law* stated:

"Whether federal maritime law governed this accident in turn depends on whether this is a case within the admiralty and maritime jurisdiction conferred on the district courts by the Constitution and the jurisdictional statutes." 404 U.S. at 204, 92 S.Ct. at 420.

Thus, we are precluded from applying maritime law in a diversity case, absent maritime jurisdiction. *See also* Cooper v. Australian Coastal Shipping Comm'n., 338 F.Supp. 1056 (E.D.Pa. February 24, 1972); McGrath v. N. V. Reederij "Nautiek", F.Supp. (E.D.Pa. December 30, 1971). Since plaintiff has conceded that he cannot establish that his injuries were caused by defendant's negligence, defendant's motion for summary judgment will be granted.