Luther D. SCOGGINS, Plaintiff,

v.

SEA-LAND SERVICE, INC., Defendant.

Civ. A. No. 828–70–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

April 12, 1972.

Sidney H. Kelsey, Norfolk, Va., for plaintiff.

Robert M. Hughes, III, Norfolk, Va., for defendant.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

This case comes on for hearing on a motion for summary judgment by the defendant, Sea-Land Service, Inc., pursuant to Rule 56 of the Federal Rules of Civil Procedure. The defendant's motion is supported by an affidavit of D. E. McLellan, manager of Sea-Land's Portsmouth terminal, and the discovery deposition of the plaintiff, Luther B. Scoggins. The plaintiff submitted the discovery deposition of William Leroy Gill, the leader of the "stuffing gang" with whom Scoggins was working at the time of the accident.

The plaintiff's complaint sets forth a cause of action based upon three grounds: (1) breach of the warranty of seaworthiness by Sea-Land in providing a defective cargo container, (2) negligence on the part of Sea-Land in not providing the plaintiff with a safe place to work, and (3) that the plaintiff is a third-party beneficiary of a contract between the International Longshoremen's Association and Sea-Land. The defendant's motion for summary judgment states that: (1) at the time of the

plaintiff's injury the warranty of seaworthiness did not attach to the container since said container was not used in connection with the service of a vessel at the time of the accident, (2) Sea-Land did not owe any duty to the plaintiff since he was not employed by Sea-Land at the time of the accident, and control of the container had been surrendered to Southgate Trucking Company, and (3) that no contract exists between the International Longshoremen's Association and the defendant.

From the affidavits and depositions filed by both parties, the facts, construed most favorably to the plaintiff, appear to be as hereinafter recited. Sea-Land Service, Inc., maintains a marine terminal in Portsmouth, Virginia, which functions in the relatively new container shipping industry. One of Sea-Land's containers, No. 51–503, was discharged in Portsmouth by a vessel on November 11, 1970. This empty container was placed on chassis No. C4037, also owned by Sea-Land, and stored in the Portsmouth terminal.

On November 16, 1970, Southgate Trucking Company leased the container and chassis in question from Sea-Land, pursuant to a written agreement whereby Southgate would have complete control and supervision of the trailer while it remained in Southgate's possession. Southgate took the container and chassis from Portsmouth to Newsport News, Virginia, approximately thirty miles away, to pick up a cargo of neoprene rubber, eventually bound for a vessel other than the one that had discharged the container on November 11, 1970. The container and chassis, as a unit, were backed up to a warehouse apron. The tractor was unhooked and removed, leaving the front of the chassis supported by small fold-down legs connected to its underside.

On November 18, 1970, at Newport News, Tidewater Stevedoring Corporation commenced loading or "stuffing" the container, as it stood on the chassis, by moving cargo pallets from the warehouse to the container. Luther Scoggins, a longshoreman, was employed in this endeavor by Tidewater as a member of Gill's "stuffing gang." The gang consisted of a dock header, a boss, two towmotor drivers, and Scoggins. As pallets containing bags of neoprene were placed in the container by the towmotors, Scoggins would place paper between them to insure that the load was tightly packed. This job required him to remain in the container until it was completely loaded.

At the time of the accident, one or two pallets had already been loaded. As a towmotor entered the container to pack another pallet, the right front leg of chassis No. C4037 gave way, causing the container to tip over with Scoggins inside. Scoggins received serious bodily injuries as a result of this accident.

We will first consider the plaintiff's allegation that Sea-Land breached the warranty of seaworthiness owed Scoggins. This contention raises the issue of whether Scoggins can invoke the maritime jurisdiction of the United States District Court on the above set of facts. This question has been answered by the recent Supreme Court decision in Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971). The court, noting that historically the gangplank has served as a rough dividing line between the state and maritime jurisdictions, held that federal maritime law, including the doctrine of unseaworthiness, does not govern pier-side accidents caused by pier-based equipment.

We feel that the decision in Victory Carriers, Inc. v. Law, *supra*, is controlling on the set of facts at hand, and warrants granting the defendant's motion for summary judgment on the issue of the applicability of the doctrine of seaworthiness to Scoggins. The misfortune occurred in Newport News, Virginia, thirty miles from Portsmouth, the city in which the defendant's vessel was to be loaded, while the *container* was being loaded. In no way had the loading process begun as far as the vessel was concerned. These containers were to be transported back to Portsmouth before being loaded upon a Sea-Land

vessel. Furthermore, as the court in *Victory Carriers, Inc., supra* at p. 211, 92 S.Ct. at p. 424, pointed out:

"The Court has never approved an unseaworthiness recovery for an injury sustained on land merely because the injured longshoreman was engaged in the process of 'loading' or 'unloading.' "

█ The defect alleged by the plaintiff was not a defect contained in the ship's equipment or an appurtenance of the ship. Chassis No. C4037, New Jersey License No. TRD–432, is owned by Sea-Land and used exclusively for transporting containers on land. It was leased to Southgate at the time of the accident and was employed by them solely as a road vehicle. We find that the defective chassis is strictly shore-based equipment that is not connected to the vessel.

The plaintiff bases his objections to the unseaworthiness phase of the motion for summary judgment in a number of cases, the most significant of which are Gutierrez v. Waterman Steamship Co., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), United States Lines Co. v. King, 363 F.2d 658 (4 Cir., 1966), and a recent Fourth Circuit Court of Appeals case, Tucker v. Calmar Steamship Corporation, 457 F.2d 440 (4 Cir., 1972).

These cases are clearly distinguishable from the facts at hand. In *Gutierrez, supra,* federal admiralty jurisdiction was clearly present since the Admiralty Extension Act on its face reached the injury there involved. The court there held that the injury was caused by an appurtenance of the ship, defective cargo containers, since the vessel had *accepted* the cargo in the defective containers. The vessel, in the case at hand, had never accepted or even seen the chassis; nor would it ever accept or see the chassis. Therefore, under the *Gutierrez* reasoning, it never became an appurtenance of the ship, and the warranty of seaworthiness never attached to it. In *King, supra,* the Fourth Circuit Court of Appeals did not deal with the question of

the extent of federal admiralty and maritime jurisdiction since the accident there occurred on navigable waters. In the recent case of Tucker v. Calmar Steamship Corporation, Tucker, a longshoreman, was assisting in transferring a load of steel pipe to the vessel's cargo hold from a railroad gondola car stationed on the pier adjacent to the vessel. This process was accomplished by a cable extended from the ship's port winch to a pulley attached to a post on the roof of the pier's warehouse and then down to the gondola car. The court held that the method of loading made the ship unseaworthy, considering the surrounding conditions at the time, in view of the fact that a safer method was available and the loading operation was continuous with physical connections at all points. As was the case in *King, Tucker* did not deal with the extent of federal admiralty and maritime jurisdiction. Obviously the injury in *Tucker* was traceable to defects in an appurtenance of the ship and its unfitness for loading, in view of the fact that the cables used were driven by winches physically attached to the vessel. The injury in the case at hand, as noted above, was not caused by an appurtenance of the ship unfit for loading, but by a defect in shore-based equipment.

Under the reasoning of Victory Carriers, Inc. v. Law, we grant the defendant's motion for summary judgment, as it applies to the unseaworthiness contention, because it appears from the pleadings, depositions, and affidavits that maritime jurisdiction is not applicable to this case, and Sea-Land is entitled to judgment on that issue as a matter of law.

█ The second contention of the plaintiff is that Sea-Land was negligent in not providing him with a safe place to work. This issue involves a number of factual determinations that could only be borne out through evidence introduced in a trial proceeding. Consequently the defendant's motion for summary judgment on the issue of negligence is denied.

The plaintiff's last contention is that he is a third-party beneficiary of a contract between the International Longshoremen's Association and Sea-Land. No such contract exists and therefore the defendant's motion for summary judgment on that issue is granted.