**Clifton BOYD, Plaintiff,**

v.

**AMERICAN EXPORT ISBRANDTSEN LINES, INC.,**

and

**United States of America, Defendants and Third-Party Plaintiffs,**

v.

**UNITED STATES of America**

and

**Norfolk Terminal Corporation, Third-Party Defendants.**

**Civ. A. No. 799–71–N.**

United States District Court,
E. D. Virginia,
Norfolk Division.

Aug. 17, 1973.

Arthur C. Ermlich, Norfolk, Va., for plaintiff.

Charles R. Dalton, Jr., Norfolk, Va., Seawell, McCoy, Winston & Dalton, Norfolk, Va., for American Isbrandtsen Lines, Inc.

Walter B. Martin, Jr., Norfolk, Va., Vandeventer, Black, Meredith & Martin, Norfolk, Va., for Norfolk Terminal Corp.

Michael A. Rhine, Asst. U. S. Atty., David V. Hutchinson, U. S. Dept. of Justice, Admiralty & Shipping Section, Washington, D. C., for the United States.

## MEMORANDUM OPINION

MacKENZIE, District Judge.

Longshoreman Clifton Boyd, employed by Norfolk Terminal Corporation, here proceeds by amended complaint for damages for personal injuries against American Export Isbrandtsen Lines (Export) and the United States.

Boyd's injuries were sustained while the plaintiff was engaged in unloading a container ("stripping" a container) at a Government warehouse located at the Norfolk International Terminal. He charges both defendants with "negligence, unseaworthiness, and breach of warranty" and premises his claim against the United States on the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b).

Export filed a third-party complaint against the United States and Norfolk Terminal Corporation. The United States, in turn, cross-claims against Norfolk Terminal for indemnity.

## FINDINGS OF FACT

The facts are largely undisputed.

The sequence of events giving rise to the injuries of the plaintiff may be summarized briefly as follows. Export contracted with the United States Navy for the use of cargo containers for the shipment of goods from abroad. Pursuant to the contract, issued by the Navy Regional Procurement Office, United States Naval Base, Philadelphia, Pennsylvania, and administered by a supply officer, United States Naval Air Facility, Sigonella, Sicily, an independent contractor was engaged to "stuff" the containers. The containers, after being loaded, were transported to Naples, Italy, for shipment to the United States on Export's S.S. GREAT REPUBLIC.

On 28 May 1971, the S.S. GREAT REPUBLIC arrived in Hampton Roads. The following day, the containers were off-loaded by longshoremen of Atlantic & Gulf Stevedoring Company, placed on a trailer train and thereafter transferred to a storage area, or stack, to await further handling. Subsequently, several days later, Norfolk Terminal transferred the containers from the storage stack to a warehouse leased by the United States for stripping. On 2 June 1971, Norfolk Terminal Employees, including plaintiff, commenced stripping the containers.

The container in issue, No. 267882, was approximately 20 feet long, 8 feet high, and 8 feet wide. It was stuffed with cartons of household goods and two pallets of gas cylinders. The round met-

al cylinders, 9 or 10 to a pallet, had been placed in the container with the length of the tubes parallel with the rear, outward-swinging doors of the container. There is a conflict in the evidence as to whether metal bands were not used to secure the cylinders to the wooden pallets, or were installed, but parted thereafter. The legal result would be the same in either case. No lashing or shoring of the pallets had been attempted. When plaintiff opened the left-hand door of the container, loose cylinders rolled out forcing open the other door, hitting the plaintiff and injuring him.

## CONCLUSIONS OF LAW

Turning first to plaintiff's claim that the doctrine of seaworthiness applies to his cause of action, and that the vessel (Export) owes this obligation to him. We disagree.

Article III, § 2, cl. 1 of the United States Constitution extends the federal judicial power "to all Cases of admiralty and maritime jurisdiction." Congress further implemented this section in 46 U.S.C.A. § 740:

> "The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel *on navigable water*, notwithstanding that such damage or injury be done or consummated on land." [Emphasis added].

Although there have been many cases interpreting this provision, the Supreme Court of the United States recently defined its outer limits in Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971), reh. denied 404 U.S. 1064, 92 S.Ct. 731, 30 L.Ed.2d 753 (1972). The opinion makes it clear that a plaintiff's claim of unseaworthiness, whether asserted under Article III or under federal diversity jurisdiction, 28 U.S.C.A. § 1333, will still be rooted in federal maritime law. *Victory Carriers, supra*, at 205.

> "Whether federal maritime law governed this accident in turn depends on whether this is a case within the admiralty and maritime jurisdiction conferred on the district courts by the Constitution and the jurisdictional statutes." 404 U.S. 202, 205, 92 S.Ct. 418, 420, 30 L.Ed.2d 383.

■ In reviewing the historical boundaries between state and federal law with respect to federal maritime jurisdiction of tort claims, the Court was "not inclined . . . to disturb the existing precedents and . . . extend shoreward the reach of the maritime law . . . ." *Victory Carriers, supra*, at 212. The Court reaffirmed that the "locality" of a tort governs jurisdiction, and hence the applicable law, and not whether a stevedore is performing a particular "function," such as loading or unloading. *Victory Carriers, supra*, at 206–212. Briefly stated, accidents on land do not come within the maritime jurisdiction of the federal courts. *See*, Cannida v. Central Gulf Stream Loading, 452 F.2d 949 (3rd Cir. 1971); Kearney v. Savannah Foods & Industries, 350 F.Supp. 85 (S.D.Ga. 1972); Reed v. Diamond Shamrock Corporation, 346 F.Supp. 65 (E.D.Texas 1972); Scoggins v. Sea-Land Service, Inc., 340 F.Supp. 1100 (E.D.Va.1972).

■ In determining the situs of a tort for purposes of admiralty jurisdiction, it is well settled that the tort is deemed to occur not where the wrongful act has its inception, but where the impact of the act or omission produces such injury so as to give rise to a cause of action. The Plymouth, 3 Wall. 20, 36, 70 U.S. 20, 36, 48 L.Ed. 125 (1865); *See*, McCall v. Susquehanna Electric Company, 278 F.Supp. 209 (D.Md.1968).

In the case *sub judice*, the plaintiff was injured on land, while unstuffing a container located in a warehouse approximately one-half mile from the pier. Delivery had been completed by the vessel. The vessel had departed Hampton Roads several days prior to the accident. The stripping of the container was not arranged for by the shipowner; nor did it have any connection with the vessel;

its machinery or equipment; its crew, or its loading or unloading. Export had no authority to break the seal which had been placed on the container by the shipper to ascertain if the cargo had been properly loaded. Export was under a duty to break the seal only if there was outward manifestation of defects in the container indicating misloading.

■ Clearly, under the standard set forth in *Victory Carriers, supra,* there is no basis upon which federal maritime jurisdiction can be asserted. Therefore, federal maritime law, including the doctrine of unseaworthiness, is inapplicable. Plaintiff's remedy, as it should be, is under the proper compensation law. The claim originally obliquely asserted by plaintiff, that Export's container was defective or unseaworthy for the purpose for which it was intended, was not developed at the trial to meet any standard of proof. Hence we need not now decide whether Gutierrez v. Waterman Steamship Corporation, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963) has any application. Likewise, there is no evidence to support a claim of negligence against Export.

Although perhaps not necessary to the disposition of this case, for appellate purposes, we likewise explore Boyd's status.

The doctrine of the "unseaworthiness" of a vessel as establishing liability of a shipowner in favor of a longshoreman *working aboard the vessel*, was introduced by Justice Rutledge in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S. Ct. 872, 90 L.Ed. 1099 (1946), reh. denied 328 U.S. 878, 66 S.Ct. 1116, 90 L. Ed. 1646.

■ Boyd, as was Sieracki, was a longshoreman. Unlike Sieracki, however, Boyd was not working aboard the vessel at the time of injury. To avail himself of the benefits of the unseaworthiness rationale, Boyd must identify the work being done by him at the time of the accident to be such work as is traditionally done by a member of the ship's crew. In the words of *Sieracki,*

*supra,* as a shore worker, Boyd must have been " . . . in short, a seaman doing a seaman's work and incurring a seaman's hazard." Such is not the case here.

The longshoring activity anent this visit of the S.S. GREAT REPUBLIC to Norfolk, equating a seaman's duty, was the off-loading of the vessel by longshoremen of Atlantic & Gulf Stevedoring Company on 29 May 1971. Boyd was not a member of this group. After the unloading of the containers from the vessel to the dock on 29 May, they were moved to a storage yard several hundred yards from the pier. The vessel sailed. Four days later, under an entirely separate freight movement contract between the United States Government and Norfolk Terminal Corporation, the offending container was moved approximately one-half mile to the Government warehouse area. Boyd's employment to strip the container on 2 June 1971 was not a ship's endeavor. He was not, in short, a Sieracki seaman.

Plaintiff's amended complaint asserts a claim against the United States under the Federal Tort Claims Act, 28 U.S.C. A. § 1346(b). We find, upon consideration of established limitations on recovery in tort against the United States, that plaintiff's claim must fall.

■ The container in question was packed ("stuffed") in Italy by one Francesco Scarpato under a contract between him and the United States. The contract is in evidence as Government's Exhibit 2. Scarpato was an independent contractor who performed his contract with his own employees. We conclude that, as such, he was not an employee of the federal government within the scope of 28 U.S.C.A. § 2671 of the Tort Claims Act.

By virtue of the Tort Claims Act, Congress waived the sovereign immunity of the United States to be sued in tort when an "employee" of the federal government was negligent. 28 U.S.C.A. § 1346(b). "Employee" is defined by statute to include "officers or employees

of any federal agency" and "persons acting on behalf of a federal agency in an official capacity, temporarily or permanently." 28 U.S.C.A. § 2671. This definition has been interpreted as not broad enough to include independent contractors. The reasoning followed by the courts is that an "employee" within the scope of § 2671 is defined according to the general principles of agency, because the purpose of the Act is to fix the federal government's liability under the doctrine of *respondeat superior.* Accordingly, because there is little affirmative control of the actions of an independent contractor, as distinguished from a "servant," courts have had little difficulty in finding that the term "employee" does not encompass an independent contractor. *See*, Yates v. United States, 365 F.2d 663, 668 (4th Cir. 1966); Dushon v. United States, 234 F. 2d 451, 17 Alaska 245 (9th Cir. 1957), cert. denied, 355 U.S. 933, 78 S.Ct. 415, 2 L.Ed.2d 416 (1958); Strangi v. United States, 211 F.2d 305 (5th Cir.1954); Marival, Inc. v. Planes, Inc., 306 F.Supp. 855 (N.D.Ga.1969); Nyquist v. United States, 226 F.Supp. 884 (D.Mont.1964); Mahoney v. United States, 220 F.Supp. 823 (E.D.Tenn.1963), aff'd 339 F.2d 605 (6th Cir. 1964).

The United States depended on the expertise of the contractor to properly load the containers. The fact that it may have reserved the right to inspect the container before it was sealed for shipment is not determinative. United States v. Page, 350 F.2d 28, 30 (10th Cir.1965), cert. denied 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470. Therefore, the United States cannot be held liable in tort for the negligent acts of independent contractors or their servants.

Judgment will be entered for the American Export Isbrandtsen Lines, Inc., defendant, and the United States of America, defendant in the action of plaintiff against them. American Export Isbrandtsen Lines, Inc. is not entitled to indemnity from Norfolk Terminal Corporation or the United States for its costs and attorney's fees in defending this action, nor is the United States entitled to indemnity from Norfolk Terminal Corporation for its costs and attorney's fees. Each party shall bear its own costs.