**J. T. LEE, Jr., Administrator and personal representative of the Estate of Mr. J. T. Lee, Sr., Deceased, Plaintiff,**

v.

**LEE MOTOR COMPANY, Defendant.**

**Alice F. LEE, Administratrix and personal representative of the Estate of Mrs. Mabel H. Lee, Deceased, Plaintiff,**

v.

**LEE MOTOR COMPANY, Defendant.**

**Civ. A. Nos. 7897–73–P and 7898–73–P.**

United States District Court,
S. D. Alabama, S. D.

May 30, 1974.

Richard Bounds, Mobile, Ala., Harvey J. Lewis, New Orleans, La., for plaintiffs.

A. Clay Rankin, III, Mobile, Ala., for defendant.

## ORDER DETERMINING STATUS OF MR. AND MRS. J. T. LEE, SR.

PITTMAN, Chief Judge.

These suits, which have been consolidated for trial, were brought by the respective administrators of the estates of Mr. and Mrs. J. T. Lee, Sr. Damages are sought for injuries received on the vessel Mabel H., III, as the result of an explosion and fire aboard the vessel on July 27, 1972, which caused the deaths of both Mr. and Mrs. Lee, Sr. The Mabel H., III was a 45 foot yacht owned by the defendant company. Plaintiffs allege that this court has jurisdiction under the Jones Act, 46 U.S.C. § 688, and/or the General Maritime Law, including the warranty of seaworthiness. By letter dated March 22, 1974, the parties, through defense counsel, informed the court that a substantial issue existed regarding the status of the decedents at the time of the accident. Since it was asserted that a determination of this question would affect the conduct of the suit, the court set a special hearing on April 5, 1974. After the introduction of depositions and other evidence, the parties submitted the status question to the court for its determination.

Decedent J. T. Lee, Sr. was the founder and a principal stockholder of the Lee Motor Company, defendant herein, an automobile dealership located in Monroeville, Alabama. Around the beginning of January, 1961, the senior Lee turned the reins of the business over to his son, J. T. Lee, Jr., and became chairman of the board of the corporation at a salary of $100 per month. Decedent Mabel H. Lee (Mrs. J. T. Lee, Sr.) was secretary-treasurer of the company during the period 1961–1972 and she received a salary also.[1] Although Mr. Lee, Sr. was not involved in the daily operation of the business, he frequently acted as a consultant to his son on business matters.

For many years prior to 1972, the company or Mr. Lee, Sr. had owned a yacht. The vessel involved in this litigation was purchased by the company on July 13, 1957, and renamed Mabel H., III. The yacht was a twin screw vessel with two staterooms and crews' quarters, sleeping accommodations for six persons, bathroom facilities and a fully equipped galley. The senior Lee was an avid and accomplished yachtsman and was primarily responsible for repairs and maintenance of the vessel. He could perform much of this work himself, or with the aid of Lee Motor Company employees, although some of the work was contracted out. The yacht was used, according to the deposition of J. T. Lee, Jr., for the recreation and entertainment of the company's customers, employees, and officers, including the decedents.[2] Apparently the vessel was used primarily for fishing trips. On some of these trips, customers of the company were guests; on other occasions, the vessel would carry only the Lee family or company employees. The evidence presented to the court indicates that either J. T. Lee, Sr. or his son would be on board when the vessel sailed. Mrs. Lee, Sr. was not a regular participant in these voyages, but would usually serve as cook when she did sail on the yacht.

---

1. The court notes that at the time of the accident, both Mr. and Mrs. Lee, Sr. were paid $150.00 a month by the company. The date of their pay increase is not provided in the record.

2. The corporation also took business expense deductions from its income tax for the expenses of operating and maintaining the Mabel H., III.

There was some question at the hearing as to the frequency with which the vessel was used. By stipulation filed April 12, the parties have agreed that a guest log was kept which was customarily, though not invariably, signed. It reflects that three trips with customers aboard were taken in 1968 by decedent; four trips were taken in 1969; six trips in 1970; no trips with customers in 1971. The stipulation also states that it is not known how many trips made with customers, if any, were not reflected in the guest register. From October 1970 to July 1972, one week before the accident, no guests were taken aboard. From October 1970 to March 1971, the Mabel H., III remained at berth in the Dog River Marina, near Mobile, Alabama. In March 1971, the vessel was taken to Live Oak Landing for its annual refurbishing under the direction of the senior Lee. These repairs took about three weeks, during which time Mr. and Mrs. Lee, Sr. stayed on the vessel, save one weekend. The vessel was then returned to Dog River Marina for further work. Shortly thereafter, Mr. Lee, Sr. became quite ill and the vessel remained in drydock until July 20, 1972 (one week before the accident), when it was taken to Orange Beach, Alabama, by J. T. Lee, Jr.[3]

The accident which is the subject of this suit occurred one week later on July 27, 1972. On July 26, Mr. and Mrs. Lee, Sr., J. T. Lee, III, their grandson, Lee Company employee Rayford Wiggins, and Mrs. Lee's aunt went to Orange Beach to do some work on the vessel and to relax. They spent the night of the 26th on board the Mabel H., III, with Mrs. Lee cooking for the party. There were no plans to take any customers out on the vessel during this visit to Orange Beach. Early on the morning of July 27, an explosion occurred resulting in serious injury to both of the senior Lees.

■ The primary question involved in this matter is whether or not Mr. or Mrs.

Lee, Sr. were "seamen" within the meaning of the Jones Act, 46 U.S.C. § 688. The determination of seaman's status is normally a factual matter to be resolved by the trier of facts. *Ross v. Mobil Oil Corp.*, 474 F.2d 989 (5th Cir. 1973). In the instant case, the parties have agreed to the facts and have submitted the status question to the court for a ruling. The leading case in this circuit on the determination of seaman's status is *Offshore Company v. Robison*, 266 F.2d 769 (5th Cir. 1959), wherein the court states:

> [T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel . . . or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance . . . . . .

*Id.* at 779.

■ As the court points out in *Robison*, the ascertainment of the existence of seaman's status rests on the application of the above test to the facts and circumstances of each case. No hard and fast rule exists on this issue. Having applied the test set forth by Robison to the facts of this case as agreed to by the parties, the court finds that Mr. and Mrs. Lee, Sr. were not seamen under the Jones Act at the time of the explosion on July 27, 1972.

In its determination, the court has focused primarily on the first prong of the bipartite *Robison* standard. To fall within this requirement, the decedents must have either been permanently assigned to the Mabel H., III *or* performed a substantial part of their work aboard the vessel. The facts fail to support a finding of permanent assignment to the

**3.** Although the vessel remained in drydock for this extended period of time, Lee, Jr. stated in his deposition that his father would go to the Marina as often as possible to inspect the yacht. The vessel was not used for any purpose during the period from October 1970 to July 1972.

yacht, consequently, plaintiffs must rely on the "substantial part of their work" standard. The court has set out in some detail the facts and circumstances regarding the use of the Mabel H., III by members of the Lee family. Mr. Lee, Sr. was chairman of the board of Lee Motor Company, his wife was secretary-treasurer. Both received a salary, but neither had specific duties with the company. Mr. Lee, Sr. was frequently consulted by his son on business affairs; however, he was primarily a retired businessman who enjoyed sailing. Although the deposition of Lee, Jr. asserts that Mr. and Mrs. Lee were expected to maintain the yacht and entertain customers as part of their corporate duties, the court finds that the facts place a different light on this statement. The company is a closely-held family corporation, founded by Lee, Sr. and now run by his son. It is undisputed that Lee, Sr. was an avid seafarer and enjoyed working on and sailing this vessel. Since his retirement in 1961, the elder Lee has abdicated the day-to-day control of the business to his son. The court is of the opinion that the yacht was kept primarily for the use and enjoyment of Mr. and Mrs. Lee, Sr. during their retirement. This conclusion is bolstered by the infrequency of any voyages with customers recorded in 1968–1972. It is further strengthened by the fact that during the elder Lee's illness, the vessel remained in drydock for close to two years. The scattered and infrequent voyages of the vessel with customers of the company on board did not constitute a substantial part of the work of Mr. Lee, Sr. with the company.

In speaking to the section of the *Robison* test now under consideration, the court in *Keener v. Transworld Drilling Co.,* 468 F.2d 729 (5th Cir. 1972) held:

> . . . that to meet the requirement of *Robison* that the workman "performed a substantial part of his work on the vessel" it must be shown that he performed a significant part of his work aboard the ship with at least some degree of regularity and continuity.

*Id.* at 732.

See also in this regard, *Labit v. Carey Salt Co.,* 421 F.2d 1333 (5th Cir. 1970). The facts presented in this case fail to meet the Robison test, as explained in *Keener.* There was little regularity or continuity to the work which Lee, Sr. performed on the yacht for the company. Furthermore, the plaintiffs have failed to establish that Mr. or Mrs. Lee performed a significant part of their work aboard the yacht, especially in the period from 1968–1972.

The court is also influenced in this case by the decision in *Young v. Clear Lake Yacht Basin, Inc.,* 337 F.Supp. 1305 (S.D.Tex.1972); *affirmed on District Court's opinion,* 473 F.2d 1389 (5th Cir. 1973), cert. denied, 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 106. In *Young,* a closely-held corporation provided funds for the purchase of a vessel. Title was taken in the name of Jack Young, a company executive. After the purchase, repair work and maintenance of the yacht was performed by various officers and employees of Young Furniture Company, including Jack and Robert Young. After it was shipshape, the vessel was used by the Young brothers for business and pleasure purposes on several occasions prior to an explosion which was the genesis of the lawsuit. The court specifically rejected plaintiff's claim that Robert Young was a seaman at the time of the explosion:

> The [vessel] was a private pleasure craft. It was used in such a manner at all times material to this suit, and it did not have a crew. Although it was manned by either Robert or Jack Young or both, whenever it was operated, their "sporadic contacts for brief periods of time" aboard the [vessel] fall far short of meeting the criteria established to place them in a position to enjoy the status of seamen, . . . ; *Offshore Co. v. Robison,* 266 F.2d 769 (5th Cir. 1959) and cases cited therein.

*Id.* at 1315.

The facts of the case at bar are very similar to those presented by the *Young*

case. This court has drawn a similar conclusion. The plaintiffs have failed to establish that the first prong of the *Robison* test was met in this case. The brief, sporadic contacts of the senior Lees with the Mabel H., III and the limited connection of their sailing of the yacht with the business of the Lee Motor Company makes this suit factually similar to *Young*.

The court concludes that the decedents were not seamen under the Jones Act at the time of the explosion.

■ Although not pressed vigorously at the hearing on this issue, the theory that plaintiffs should come within the ambit of *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), has been pursued by counsel in briefs filed after the hearing. The *Sieracki* decision extended to longshoremen the traditional warranty of seaworthiness owed to a member of the crew of a vessel. *Sieracki* has been applied and extended to cover maritime workers who are performing traditional seaman's work. See *West v. U. S.*, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959). However, "[w]hat is not so well known is how far the courts have gone beyond these landmark decisions [*Sieracki* and *Pope & Talbot v. Hawn*, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953)] to enlarge the group of *maritime workers* who can benefit from the doctrine." Bue, *Admiralty Law in the Fifth Circuit*, 4 Hou.L. Rev. 347, 399 (1966). (Emphasis added.)

Under the facts stipulated in this case, the court has been unable to locate any authority which would justify extending *Sieracki* status to Mr. and Mrs. Lee. Plaintiff has been unable to supply any assistance to the court on this issue, but argues that *Sieracki* status should certainly be conferred on the decedents. The relationship between Mr. Lee and the defendant, and his use of the vessel Mabel H., III are set out in some detail, *supra*. Considering these circumstances,

the court finds that Mr. and Mrs. Lee were not members of that group of maritime workers doing traditional seaman's work to whom the doctrine of seaworthiness has been applied. In this conclusion, we are guided by Judge Bue's opinion in the *Young* case, discussed previously in connection with the Jones Act question. The facts of *Young* are similar to those of the case at bar. The Young brothers used their yacht for business and pleasure purposes and they performed maintenance and repairs on the vessel. Nonetheless, the court held:

> [T]he plaintiff is not a seaman and, upon the evidence before this Court, cannot be said to be engaged in work traditionally performed by seamen. The [vessel] was a private pleasure craft. It was used in such a manner at all times material to this suit and it did not have a crew. 337 F.Supp. at 1315.

The court concluded that the sporadic contacts of the plaintiff with the vessel precluded seaman's status under the Jones Act.

As in *Young*, the Mabel H., III was a private pleasure craft which was not used for commercial purposes. The yacht had no crew, and, as noted above, was used only when Mr. Lee, Sr. was healthy and fit for sailing. The senior Lees, like the plaintiff in *Young*, cannot be said to have been performing traditional seaman's work at the time of the accident involved in this litigation. Consequently, the court concludes that the doctrine of seaworthiness does not extend to the decedents under the theory of *Sieracki*.

The court concludes that the Lees were not seamen within the scope of the Jones Act and also were not entitled to seaman's status under *Sieracki* and its progeny.

The plaintiffs have a cause of action for negligence but not as seamen.